**Hugh M. SINCLAIR,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and INA Corporation.**

**Civ. A. No. 83–2649.**

United States District Court, E.D. Pennsylvania.

Oct. 31, 1984.

On Counsel Fees and Costs March 28, 1985.

John C. Wright, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Hugh M. Sinclair.

Francis M. Milone, Morgan, Lewis & Bockius, Philadelphia, Pa., for CIGNA & INA Corp.

## MEMORANDUM

GILES, District Judge.

After a trial on liability and all back pay issues, a jury answered special interrogatories finding that the plaintiff was separated from the defendants' employ because of his age and that the termination was willful in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

("ADEA").[1] The court now must mold the verdict, fashioning an equitable, "make whole" remedy.

### Reinstatement

■ Considering all the evidence presented, I conclude that reinstatement is appropriate. No evidence was adduced that CIGNA Corporation harbors such hostility towards plaintiff that it would either be futile or unfair to order reinstatement. The defendants' corporate officer who terminated plaintiff, Mr. Heth, is retired. Moreover, at trial, both plaintiff and Mr. Heth, testified that they had been friends for many years. The jury's finding of a willful violation means no more than that the defendants' consideration of age as a determining factor in the termination was voluntary. Its finding does not equate to a finding of malice or employer hostility.

There was evidence that when the CIGNA merger came about, Mr. Heth or other of defendants' officials strongly urged plaintiff to retire voluntarily under the companys' early retirement plan at age 55. The merger gave Mr. Heth, who became responsible for the elimination of duplicative and inefficient jobs, the opportunity to eliminate plaintiff's position. The evidence suggests that had plaintiff not been eligible for early retirement, his job title would not have been eliminated. His position was not duplicative of any in the merged Connecticut General Insurance Company. Plaintiff was president of a small subsidiary of INA, responsible for the management of no more than six persons. His duties were not eliminated but delegated to others in the subsidiary and the parent company. Mr. Heth testified that he felt plaintiff was not happy with his work. Consequently he was firmly convinced that it was in the plaintiff's and company's best interests for plaintiff to retire early and suggested this to plaintiff as a friendly gesture. Plaintiff was given the opportunity to make other employment plans, given severance pay of one year's salary and has received pension benefits totalling $33,586.00 from the date of separation to the present. Consequently, defendants' actions causing plaintiff to leave the company was not with the kind of animosity which would compel a court to abandon the normal remedy for illegal discharge—reinstatement.

Defendants advised the court and plaintiff before and during trial that they would make an offer of reinstatement to a comparable job and salary should the jury determination be adverse. Likewise, before trial, plaintiff apprised the court that he would accept reinstatement to a comparable position. There was no evidence presented at trial that a comparable job no longer exists within CIGNA for which plaintiff is qualified. The court will retain jurisdiction to assure that the job offered is comparable should defendants elect not to return plaintiff to the position he last held. Reinstatement having been determined appropriate, plaintiff's claims for future damages are deemed moot.

### Back Pay

■ A victim of age discrimination is entitled to be made whole, that is, to be returned to the same economic status had there not been discrimination. In this case, plaintiff suffered no monetary loss between the date of termination and the present. It was stipulated that had he remained in defendants' employ he would have earned $70,850 per year for two years or a total of $141,700 in salary, $3000 in bonuses, $1,500 in tax preparation fees (1983 only), and $1,904.99 in matched savings, for a total anticipated wage—covering the period October, 1982 through October, 1984—of $148,104.99 or an average of $74,052.50 per year.[2]

---

1. Plaintiff had been employed by defendant INA Corporation. His separation occurred after INA Corporation merged with Connecticut General Corporation to form CIGNA Corporation.

2. At trial, plaintiff failed to produce sufficient evidence from which a jury could have reasonably calculated any salary increases for the years 1982, 1983, and 1984. The parties were unable to stipulate as to the amount of any salary increase. In the record charge conference plaintiff conceded that he presented no evidence at all as to 1984. As to 1982 and 1983,

Plaintiff experienced no hiatus in securing other employment. From his new employer, plaintiff has earned $63,400.62 per year or $126,800.04 for the back pay period. Consequently, plaintiff had a loss of earnings of $10,652.48 per year or $21,304.96 for the two years. Immediately upon leaving the defendants, plaintiff began receiving a severance pay of $70,850.00, spread over the succeeding 52 weeks. The severance pay was not money which the plaintiff would have earned had he remained employed by defendants. It was unearned. Thus, it must be credited against the loss of earnings caused to the employee. Since the $70,850.00 exceeds plaintiff's total loss of earnings of $21,304.96, he has not suffered any back pay loss and would not until the $70,850.00 contribution of the employer was exceeded by interim earning differentials.

Plaintiff asks this court to adopt a year-by-year approach in determining back pay loss, citing *Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 693 (8th Cir. 1983). In *Leftwich*, the victim of employment discrimination had suffered earning losses in the first two years following termination. In the third year in his new job, the plaintiff earned an amount which exceeded the past employer's salary by roughly the sum lost in the first two years. The district court held that under the "make-whole" principle the employee had experienced no loss over the three year period. The Eighth Circuit disagreed and, without explanation, held that "when . . . a

plaintiff's interim earnings in any year exceed the wages he or she lost due to the discrimination, that "excess" must not be deducted from any back pay for other years to which the plaintiff is entitled." This approach may have some utility where a court cannot be certain that the subsequent year excess earnings were attributable to cost of living increases or some other factor which would negate any real excess earnings. This situation is not present in this case. Because applying *Leftwich* here would result in a departure from the "make-whole" principle, I will not follow it.[3]

Even if I did follow *Leftwich*, its rule would not aid plaintiff here. Defendants have given plaintiff $70,850.00 in severance dollars. In *Leftwich*, there was no severance pay and a loss of earnings. In the instant case, by reason of the termination, plaintiff received a gain of $60,197.48 in the first year over what he would have earned in salary had he remained employed by defendants.[4] Plaintiff argues that he should be allowed to keep this under the *Leftwich* decision and still claim for a wage differential in the second year. I disagree. That rule on its face applies only to wage differentials. It anticipates that the employee will have received a *loss* by reason of the termination, not a *gain*. In applying the *Leftwich* rule, by its terms, it would be incongruous to treat severance pay as wages which the employee lost due to the discrimination. Had he remained

---

there was some evidence as to salary increase guidelines ranging from 0% to 10%. Largely, any increase, if given, would be subject to company profitability and employee job performance. Plaintiff presented evidence that the insurance industry profits are cyclic or "boom" and "bust" and that 1982 was a "bust" year for defendants. He also presented evidence that apart from age considerations, plaintiff's management abilities in his last job were deficient. Plaintiff presented no evidence as to what other employees holding similar positions received in percent salary increases for 1982 and 1983. There was no evidence that the successor employer gave any wage increases in 1982 or 1983. Therefore, there was no basis for a jury to determine that plaintiff would have received any increase or by what standard any

increases awarded should be calculated. Even if he had received a 10% increase in each of three years, there still would not be any back pay award.

3. The *Leftwich* rule may assure that employers do not benefit from employee's "excess" earnings. However, in my opinion, it has an overriding disadvantage of discouraging mitigation.

4. This figure was achieved by adding the $63,400.02 plaintiff received as a salary the first year and the $70,850.00 plaintiff received as severance pay for a total of $134,250.02 and then subtracting the $74,052.50 plaintiff would have received had he remained in defendants' employ.

employed he would not have received severance pay. Since the severance pay cannot be deemed earnings for back pay purposes, it must be treated as a voluntary contribution by the employer and credited against the employer's back pay liability. In short, plaintiff has misread and misapplied *Leftwich*. As of the time of trial, two years after termination by defendants, plaintiff still had a gain of $49,545.04.[5] This court is guided by *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). The Third Circuit has stated:

> The make-whole standard of relief should be the touchstone for the district courts in fashioning both legal and equitable remedies in age discrimination cases. Victims of discrimination are entitled to be restored to the economic position they would have occupied but for the intervening unlawful conduct of employers.

569 F.2d at 1238. While defendants are entitled to use of the $70,850 as credit against their back pay liability, plaintiff will not have to disgorge his "gain" as a condition of reinstatement.[6]

Because the credit exceeds the back pay claim by $49,545.04, plaintiff is not entitled to a back pay award. Consequently, plaintiff is not entitled to any liquidated damage sum. He is entitled to reasonable counsel fees and costs.

An appropriate order follows.

### JUDGMENT ORDER

AND NOW, this 31st day of October, 1984, in accordance with the foregoing Memorandum, it is hereby ORDERED that Judgment is entered in favor of plaintiff and against defendants, to wit:

1. Defendants shall reinstate plaintiff within ten (10) days of the entry of this Order to the same job that he held before termination or to a comparable job.

2. Defendants shall restore plaintiff to the seniority, salary and benefit levels *that* he would have attained but for the termination.

3. Defendants shall restore plaintiff fully to the rights under the pension and disability plan without diminution for any interim early retirement payments which may have been received to date.

4. Pay to plaintiff reasonable counsel fees and costs in an amount to be determined.

### ON COUNSEL FEES AND COSTS

In this case brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), plaintiff seeks counsel fees and costs as the prevailing party. A jury found that plaintiff was the victim of age discrimination and that the discrimination was willful. The court molded a verdict for back pay and reinstatement. However, back pay was not part of the judgment because plaintiff received severance pay from defendants and interim pay from other comparable employment after his employment with defendant ended. Thus, plaintiff sustained no actual monetary loss despite the discharge.

The court will determine reasonable counsel fees and costs in accordance with the standards established in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corporation*, 487 F.2d 161, 167–69 (3d Cir.1973) (*Lindy I*) and *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corporation*, 540 F.2d 102, 112–118 (3d Cir.1976) (*Lindy II*) and as reiterated in *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir.1983). The essential factors to be

---

5. This sum was derived by calculating plaintiff's salary loss per year $10,652.48 ($74,052.50 minus $63,400.02) or $21,304.96 for the two year period from the date of termination through October, 1984 and then subtracting the $21,304.96 from the $70,850.00 plaintiff received as severance pay.

6. Plaintiff has also received $33,586.00 in early retirement benefits. This sum has not been considered in calculating back pay. Nor will it be returned to the employer directly or indirectly as a set-off against future retirement or disability benefit entitlements.

determined are the hours reasonably devoted by counsel to the prosecution of the claim, the hourly rate of the attorneys, the extent to which the plaintiff's claim is contingent and the quality of the attorney's work. Once a "lodestar" figure has been derived by multiplying the hours reasonably spent on the matter times the applicable hourly rate, the court must then consider whether the "lodestar" should be increased or decreased by examining the quality of counsel's efforts and the contingency of the claim.

Plaintiff's counsel seek a "lodestar" determination of $65,090.72 for lawyer time adjusted upward by a factor of two, or $130,181.44, together with $5,050.50 for paralegal services and $8,105.87 in costs for a total of $143,337.81. Defendants respond that the claim for fees is grossly excessive for work that was unnecessary and the costs unjustified. I agree. The counsel fee claim reflects work in four principal areas which were unnecessary and contrary to reason and/or law: (1) demands for statistical information far beyond a scope reasonably calculated to lead to the discovery of evidence needed to prove the claim of individual discrimination; (2) efforts to have admitted certain newspaper or periodical articles contrary to the clear rules of evidence; (3) efforts undertaken to pursue a claim for future loss of earnings to be submitted to the jury or as part of the damage calculation by the court despite the outstanding offer of reinstatement by defendants should the jury verdict be adverse to them and plaintiff's stated desire to accept such an offer should he prevail; and (4) counsel's arguments, contrary to law, that the voluntary severance payments received by plaintiff should not be set off against the back pay claim. These efforts were, for the most part, not reasonable and comprise a very substantial part of the "lodestar" claim.

Hugh Sinclair was an executive with the INA defendants. At the time of his discharge, he was the president of a wholly owned subsidiary of INA which had less than five employees. This subsidiary was devoted to the underwriting of political risk insurance. Defendants stated that the reason for plaintiff's termination was a merger of the INA defendants with Aetna Casualty Insurance Company to form the CIGNA Corporation which resulted in a reorganization of job responsibilities. Plaintiff's position was eliminated but his job functions were distributed to others in the subsidiary who were younger. The decision to eliminate plaintiff's position was made by an INA executive, Mr. Heth, who received complaints from plaintiff's subordinates about his lack of managerial skill. He never confronted plaintiff with the accusations. Mr. Heth had, prior to plaintiff being asked to assume the presidency of the political risk subsidiary, suggested to plaintiff that he elect early retirement under the companys' pension plan rather than continue in employment. Mr. Heth testified that plaintiff appeared to be unhappy because of previous company assignments. The jury could have found that rather than confront and attempt to address a managerial problem, in part created by the defendants giving plaintiff's subordinates' conflicting authority, Mr. Heth elected to force plaintiff into early retirement by eliminating his job and determining that there was no comparable job to which he could then move in the company.

Plaintiff characterized certain statements made to him by INA executives as illegal age commentary indicative of discriminatory intent. He also referenced as evidence of discriminatory intent, a car bumper sticker which read, *"It's Nifty Not to be Fifty,"* observed on the desk of the head of the personnel department. Lastly, plaintiff's counsel had available to him, through discovery, the tape recording and transcript of a speech given by the president and chief executive officer of INA to employees regarding the difficulties of effectuating a massive reduction in the workforce. In the speech, the executive stated, in effect, that the company would be prepared to discriminate on the basis of age *in favor* of persons protected under the ADEA even though persons in the non-protected group might be more qualified. A

trade periodical reported that the executive, Cox, had stated just the opposite; that is, that in eliminating jobs, the company would give preferential treatment to persons under forty. Plaintiff's efforts to have the trade periodical admitted into evidence were unsuccessful. The jury decided that plaintiff's age played a real part in the decision to eliminate the job. This decision was supported by evidence that the defendants had arguably forced plaintiff to elect early retirement for which he was then qualified because of his age.

■ A review of plaintiff's fee petition reveals that excessive time was spent on matters that reasonably could have been accomplished in substantially less time by experienced trial counsel. It also reveals that plaintiff's counsel spent considerable time pressing matters on which unreasonable positions were taken or which were simply contrary to law. Mr. Wright, plaintiff's lead counsel, professed expertise in the field of unemployment discrimination cases which is attested to by his claimed rate of $115.00 per hour until 5/1/84 and $125.00 per hour thereafter. This court will not quarrel with the claimed hourly rates. However, having accepted the rates as indicators of competency and efficiency, this court must scrutinize, in that light, the work actually done. At my direction, plaintiff's counsel submitted a revised fee petition which summarizes, by category of work performed, the hours devoted by each attorney and the reasons for the time expended.

### 1. Plaintiff's Answers to Defendant's First Set of Interrogatories—($1,851.00)

■ Plaintiff claims a total of 47.7 hours or $2,978.50 in answering defendant's first set of interrogatories. Mr. Wright spent 2.8 hours at $115.00 per hour and his associate, Mr. Gelwan, spent 45.5 hours at $55.00 per hour and 2.2 hours at $70.00 an hour. Although it includes conferences between plaintiff and counsel, this amount of time is excessive. The questions directed to plaintiff were not so complicated as to

have reasonably taken over four full days for any competent attorney to record the answers of the client. I shall reduce the 45.5 hours claimed through Mr. Gelwan to 25 hours at $55.00 per hour. Accordingly, plaintiff is entitled to $1,375.00 + $154.00 + $322.00 or $1,851 in this category of work.

### 2. Plaintiff's First Set of Interrogatories to Defendants—($2,415.00)

Almost twenty-one hours (20.9 hours) were spent by Mr. Wright in drafting plaintiff's first set of interrogatories. A senior associate of Mr. Wright's, Mr. Goldich, spent 0.2 hours on this endeavor. Defendants argue that 21.1 hours of time expended by Mr. Wright and Mr. Goldich to draft interrogatories was excessive. Defendants object that given the limited nature of the individual claim and the expertise of counsel, the interrogatories propounded should have been drafted in much less time. Plaintiff responds that the case was originally thought to have a broader scope since initially there was reason to believe that plaintiff was the victim of age discrimination against a group of managers similarly situated. Although I tend to agree with defendants, I will accept as reasonably necessary this initial investment of time by counsel to study, explore and test the first theories of the age discrimination claim. During this period of time, counsel learned specific information from his client and defense counsel which should have served to focus the thrust of pertinent formal discovery in the case. Plaintiff will be allowed $2,415.00 ($115. × 21) for this work.

### 3. Plaintiff's Motion to Compel Answers to Interrogatories (First Set)—($1,150.00)

Despite discussions in December, 1983 between the principal counsel for the parties as to the scope of the discovery requests, plaintiff's counsel believed it necessary to file a motion to compel answers to the first set of interrogatories and production of the documents. This motion was opposed by defendants on the basis that not only was the scope of the demanded

discovery unreasonable but plaintiff's absolute insistence upon such discovery was wasteful of the resources of all counsel and the court. I agree. Defendants had offered to produce answers and documents as to the substantial surety section of the company with which plaintiff was associated and which employed some 16,000 persons. Plaintiff initially refused this offer. However, the scope of discovery permitted, and agreed upon by plaintiff's counsel at a conference with the court, was almost that proposed by defendants and plaintiff's motion to compel was denied. The time spent in the preparation and research for a motion to compel was not reasonable where amicable resolution could have been reached without resort to the court. Counsel are not to be rewarded when not careful to utilize their best efforts in resolving discovery disputes. Plaintiff's counsel spent 41.7 hours of Mr. Gelwan's time at $55.00 per hour in preparation of the motion, supporting memorandum and responding to defendants' answer to the motion. I shall allow only ten (10) hours of Mr. Wright's time to this endeavor as the reasonable amount of time that would have been necessary to resolve amicably the parties' discovery. Accordingly, $1,150 is allocated to this aspect of the work as opposed to the $2,293.50 claimed.

### 4. Plaintiff's Motion to Amend Complaint—($115.00)

This work entailed a simple statement that the real employers were the INA defendants. A claim of 6.3 hours has been made. This is excessive. One hour of Mr. Wright's time, or $115.00, is allowed.

### 5. Attendance at and Preparation for Depositions—($5,471.50)

The claim encompasses seven depositions. Mr. Wright devoted 40.5 hours of his time in travel to and from the depositions and preparing for and attending the same. Mr. Gelwan devoted 24 hours generally to the effort. Mr. Gelwan's time appears duplicative to a large extent of Mr. Wright's time. I will reduce the associate time by one-half. Accordingly, the award for this aspect of the work is $5,471.50.

[Mr. Wright $(27.5 \times \$115) = \$3,162.50 + (13 \times \$125 = \$1,625.00 + $ Mr. Gelwan $(10.4 \times \$55) = \$572.00 + (1.6 \times \$70) = \$112.00]$.

### 6. Plaintiff's Motion to Modify Pretrial Schedule—($125.00)

Claim is made for 9.2 hours of associate time and 0.8 hours of partner time in the preparation and filing of a motion for a continuance of the dates of the pretrial schedule. This could have been done in one hour of partner time. Accordingly, $125.00 is allocated.

### 7. Plaintiff's Proposed Jury Instructions—($704.00)

Plaintiff claims a total of 31.8 hours in the preparation of proposed jury instructions. A review of the proposed instructions reveals that they were "boiler plate." The only novel proposed instructions consisted of erroneous requests to have the jury assess future damages, a matter committed to the sound equitable discretion of the court. Accordingly, the court finds that the claimed time is excessive and was unnecessary given the work product. Mr. Wright claims 3.4 hours, Mr. Gelwan 22.2 hours, Ms. Otero, a summer associate, 3.4 hours, and Mr. McCoyd, a summer associate, 2.8 hours. Only Mr. Wright's 3.4 hours and the hours of Ms. Otero and Mr. McCoyd will be allowed. $[(3.4 \times \$125) = \$425.00 + (3.4 \times \$45) = \$153.00 + (2.8 \times \$45) = \$126.00]$. This comes to a total of $704.00.

### 8. Proposed Stipulations of Fact—($170.00)

Plaintiff's counsel spent 1.8 hours in this endeavor and claim $170.00. This amount will be allowed.

### 9. Joint Proposed Pretrial Order—($3,673.50)

Plaintiff claims a total of 48.9 hours, 5.1 by Mr. Wright, 42.6 by Mr. Gelwan and 1.2 by Ms. Otero. Defendants object to the time claimed because allegedly plaintiff's counsel failed to comply with the court's scheduling order which set the date by which the opposing counsel were to meet, confer and prepare the joint proposed pretrial order. Further, defendants contend

that because of plaintiff's delay, there were needless, numerous drafts of the document. Plaintiff's counsel vehemently denies that there was any delay or extra work occasioned by lack of preparedness. The hours devoted to this task appear out of proportion to the undertaking. Mr. Gelwan's time charges span the period of May 30, 1984 through August 23, 1984. However, I cannot say with any assurance that the circumstances of the case did not reasonably require the time spent. Therefore, I will allow the claim of $3,673.50 for this work.

### 10. Second Set of Interrogatories—($456.00)

The claim of time for preparation of the second set of interrogatories ($456.00) will be allowed since they generated pertinent information from the defendants.

### 11. Motion to Compel Answers to Interrogatories (Second Set)—(0.00)

The claim of $1,801.50 for preparing a motion to compel answers to one of the interrogatories, will be disallowed. The statistical evidence sought was irrelevant and untimely sought.

### 12a. Future Damages Research and Memorandum—($0.00)

Plaintiff unsuccessfully urged the theory that he was entitled to a jury or court monetary award for back pay until his retirement age of 65. This was so, even though plaintiff, in his new employment, held a position of comparable pay, greater responsibility and potentially greater salary growth than the position he held at INA. This is borne out by plaintiff's willingness, despite the order of reinstatement, to retain his new position. The time spent on this issue was unnecessary in view of the established law that reinstatement should be ordered unless the work environment at the former employer is so hostile as to make reinstatement unrealistic. In this case, CIGNA had made it clear that if the plaintiff prevailed, it would offer reinstatement to a position comparable to that which he held prior to termination. Plaintiff had voiced a willingness to accept. At

trial there was no proof of a hostile work environment that would preclude reinstatement. Consequently, the considerable work done by plaintiff's counsel on the claim for future damages was unnecessary and, therefore, unreasonable. The claim of $1,206.00 for work on a memorandum in this regard will be disallowed.

### 12b. Memorandum re Offset of Pension Benefits and Severance Pay—($0.00)

Plaintiff claims $1,008.00 (14.4 hours of Mr. Gelwan's time) for citing to this court a Third Circuit opinion, McDowell v. Avtex Fibers, Inc., 740 F.2d 214 (3d Cir.1984) for the proposition that prejudgment retirement benefits cannot be deducted from a damage award under the ADEA.

From Avtex, plaintiff attempted to argue that severance payments likewise should not be set off. This legal argument was contrary to the language of Avtex and the existing law of the Third Circuit with respect to the set off of interim earnings. The severance payments were voluntary substitutes for which plaintiff would otherwise have had to work. Because the interpretation of Avtex urged by plaintiff was unreasonable, the claim for $1,008.00 will be disallowed.

### 12c. Post Verdict Memorandum on Damages—($1,076.50)

Plaintiff claims counsel fees of $1,076.50 for posttrial work performed at the direction of the court relative to calculation of damages. This time was reasonable and will be allowed.

### 13. Answer to Defendants' Motions to Preclude Testimony of Experts—($0.00)

Plaintiff claims $1,299.00 related to opposing a motion of defendants to preclude certain expert testimony where, upon reflection, plaintiff decided not to call any experts after all. Had there been reflection before opposing the motion, the written response would not have been necessary. Moreover, a benefits expert was hardly necessary to cover the defendants' benefits package. The parties were able to

stipulate to the pertinent perquisites. This claim is disallowed.

#### 14. *Interviewing and Preparing Expert Witnesses—($1,030.00)*

The claim of $114.00 relative to the statistical expert and $916.00 as to the benefits expert will be allowed since these interviews apprised counsel that presentation of such testimony was unnecessary or unsupported by the state of the statistical record.

#### 15. *The Insurance Advocate Article—($0.00)*

Plaintiff's counsel's efforts relative to attempting to win admissibility of this trade article were unwarranted since inadmissibility was clear. There was no legitimate purpose articulated for its use—it was hearsay and a misstatement of the Cox speech, defendants were under no duty to rebut its misstatements, and plaintiff had a tape recording and transcript of the speech, whose admissibility defendants did not question. The claimed time of $1,014.50 will be disallowed.

#### 16. *Trial Preparation and Attendance—($7,556.00)*

The time claimed for trial preparation and attendance is reasonable and will be allowed except as to 10 hours of Mr. Wright's time and 10 hours of Mr. Gelwan's which was at a minimum devoted in this regard needlessly to admissibility of the Insurance Advocate article. Therefore, from the claim of $9,506.00 will be deducted $1,250 (10 × $125) + $700.00 (10 × $70) or $1,950.00, leaving $7,556.00.

#### 17. *Responses to Defendants' Post Trial Motions—($3,729.00)*

Plaintiff claims 47.1 hours by Mr. Gelwan to reply to defendants' motion for judgment notwithstanding the verdict; 5.1 hours by Mr. Gelwan to respond to a motion for relief from judgment and 0.6 by Mr. Wright for review of defendants' appeal. This time is considered reasonable considering the scope of defendants' motions and the need to respond. Accordingly, the claim of $3,729.00 is allowed for this work. Plaintiff's claim for work done in response to defendants' appeal from the denial of their motion for a judgment notwithstanding the verdict is premature given that the appeal is still pending. Consequently, an award for this claim will not be allowed.

#### 18. *Lodestar*

Based upon the foregoing, the court finds that plaintiff's lodestar is $29,522.50.

#### 19. *Quality of Counsel's Work*

The court is of the opinion that the quality of counsel's work in the case is amply rewarded by the hourly rate and the time allowed. Counsel made the case much more convoluted than it had to be and was, in fact, at trial. The trail of evidence was clear in this individual discrimination case. Counsel's unjustified positions with respect to certain aspects of law, previously discussed, confused issues and greatly increased the time that had to be expended by the court and opposing counsel. No increase in the fee is warranted. Likewise, no decrease in the lodestar is appropriate since plaintiff did work hard searching among many corporate players and papers for a motive for the termination which showed pretext and his efforts were successful, according to the jury.

#### 20. *Contingency*

This was a close case on which the jury deliberated many hours. It was in the end, at most, a credibility case. The jury apparently did not believe Mr. Heth's testimony that plaintiff's age played no part in his decision to eliminate plaintiff's position and that plaintiff's termination resulted from defendants' overall job reduction in preparation for the merger.

However, the evidence which enabled plaintiff's attorneys to argue that defendants' reasons for eliminating plaintiff's position were pretextual was obvious. There was no job performance evaluation in plaintiff's file which reflected that he was anything other than a competent manager performing within his scope of authority. Mr. Heth admitted that earlier he had encouraged plaintiff to take advantage of the early retirement program and leave the company because plaintiff appeared not to

be happy. Plaintiff's job duties were not eliminated as a result of the merger, but given to younger employees. The decision to eliminate the job title came after plaintiff's managerial subordinates complained to Mr. Heth about plaintiff and asked him to keep the complaints confidential. Mr. Heth had no managerial authority over plaintiff but did have authority to decide what jobs would be essential to retain. He chose to eliminate the plaintiff's job while retaining the management of the company in a person under age 40 who, prior to plaintiff's ascension to the presidency of the small company, had reasonably expected to run it from the beginning of operations and had, indeed, run it. Mr. Heth expressed the opinion, or at least it could be inferred from his testimony, that it was very desirable and important to retain the younger more competent employee. He felt it was likely the younger employee would resign if plaintiff remained. From this scenario, there was a compelling inference that Mr. Heth seized the opportunity to force plaintiff out into early retirement under the guise of job elimination pursuant to the merger plan. I estimate, under this proof, that plaintiff had a contingency of 50% that he would lose. Accordingly, I shall increase the lodestar by a factor of 50% to $44,283.75.

### 21. *Paralegal Work—($980.00)*

█ The claim of $4,668.00 for paralegal time to digest seven depositions is so excessive as to be fairly called atrocious. At $35.00 per hour this represents about 105 hours of time. The deposition transcripts were each under a hundred pages. The time devoted was duplicative of effort and wasteful of resources. Given the amount of work that had been devoted by the attorneys on preparing for, attending and reviewing the depositions there should not have been need for any paralegal assistance. Perhaps, the most crucial deposition was that of Heth, yet only 4 hours ($140.00) were necessary to digest this deposition. A standard of $140.00 shall be used for each of the paralegal deposition digests. A generous allowance then of $980.00 (7 × $140.00) is made.

### 22. *Preparation of the Fee Petition—($2,460.00)*

█ Plaintiff claims for 5.4 hours of Mr. Wright's, 59.9 hours of Mr. Gelwan's and 1.1 hours of Mr. Goldich's time. The claim of $4,978.00 is explained as the value of time necessary to prepare the petition, a brief in reply to defendants' opposing memorandum, a reply to defendant's supplemental memorandum and attendance at oral argument. Both Messrs. Gelwan and Wright prepared for and attended the oral argument. Mr. Gelwan's appearance at oral argument (1.8 hours) was unnecessary and will be disallowed. Plaintiff spent 47.6 hours of Mr. Gelwan's time in responding to defendants' answer to the fee petition and to defendants' supplemental memorandum wherein defendants asked essentially that in view of plaintiff's resignation from the reinstated position, that he not be considered a prevailing party. These replies were not necessary, or at least, it was not reasonable to have spent this much time responding. Plaintiff was the prevailing party and the fee petition originally submitted encompassed plaintiff's claim for counsel fees and costs. Some of the points made by defendants in attacking the fee petition were well taken. Indeed, the fee petition was inadequate in description of services in many areas. The court was prompted to direct counsel to submit a revised petition showing the hours spent by task performed without compensation. The alternative would have been to deny the claim substantially for lack of specificity. The time necessary to prepare an adequate petition for counsel fees with supporting memorandum should not have exceeded 28 hours of associate time and 4 hours of partner time to direct and review the work. Accordingly, Mr. Wright's time is reduced to 4 hours ($125 × 4 = $500.00) and Mr. Gelwan's to 28.0 hours ($70 × 28 = $1960.00). The claim for fee petition work is reduced to $1960.00 + $500.00 = $2,460.00.

### 23. *Costs—($3,348.85)*

█ Plaintiff claims costs totalling $8,105.87 for filing fees ($60.00); service of

subpoenas ($320.00); witness fees and mileage ($376.25); copying and binding ($1,201.24); telephone and telegraph ($129.27); attorney's meals ($40.95); deposition transcripts ($1,241.00); expedited trial transcript ($350.00); miscellaneous travel and mileage ($311.68); Lexis research ($1,001.60); delivery service ($61.00); overtime/clerical ($424.83); plaintiff's travel, meals and miscellaneous costs ($347.05); expert witness fees · ($2,241.00). The charge for expert witness fees will be denied because the experts did not testify at trial, their testimony was not reasonably necessary to the prosecution of the case and neither consultant provided information that counsel could not have developed from the known information. The plaintiff's travel, meals and miscellaneous costs will be disallowed because he elected to bring the lawsuit in this district and it would be unfair to tax as costs his mere inconveniences in that regard. The cost of attorney's meals will be denied as other than extraordinary expenses. The overtime/clerical costs will be denied as not shown to have been reasonably necessary, especially in view of my findings that plaintiff's counsel expended unnecessary research and writing time on matters contrary to established principles of law. The telephone and telegraph charges and delivery costs shall be disallowed as not an extraordinary expense. The copying and binding costs are denied for the same reason and because they are not shown to fall within the statutory expenses of photocopying for trial exhibit purposes. The remaining costs for filing fees, deposition and trial transcripts, Lexis research, witness fees and mileage will be allowed. These total $3,348.85.

### 24. *Conclusion*

Plaintiff is awarded counsel fees of $44,283.75, plus $2,460.00 for preparing the fee petition, paralegal fees of $980.00, and costs of $3,348.85. The judgment of October 31, 1984 shall be amended to reflect the award of counsel fees to plaintiff in the amount of $47,723.75 and costs of $3,348.85, or a total of $51,072.60.