**WASHINGTON DEPARTMENT OF WILDLIFE, et al., Plaintiffs,**

v.

**Ted C. STUBBLEFIELD, et al., Defendants.**

**No. C88–653Z.**

United States District Court, W.D. Washington, N.D.

Nov. 1, 1989.

Ken Eikenberry, Atty. Gen., David M. Horn, Terese Neu Richmond, Asst. Attys. Gen., Olympia, Wash., for Washington Dept. of Wildlife.

Victor M. Sher, Todd D. True, Corrie J. Yackulic, Sierra Club Legal Defense Fund, Seattle, Wash., for Nat. Audubon Society and Seattle Audubon Society.

Richard Cohen, Asst. U.S. Atty., Seattle, Wash., for Ted C. Stubblefield and U.S. Forest Service.

## ORDER GRANTING ATTORNEY FEES AND COSTS TO AUDUBON AGAINST FOREST SERVICE

ZILLY, District Judge.

THIS MATTER comes before the Court upon the motion of plaintiffs National Audubon Society and Seattle Audubon Society ("Audubon") for an award of attorney fees and costs (docket no. 61) against the defendant United States Forest Service ("Forest Service") under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). For the reasons stated in this Order, the Court awards Audubon attorney fees in the amount of $17,831.25, costs of $1,207.42 and expert witness fees of $3,400.00; the total of these amounts is $22,438.67.

I.

BACKGROUND

On May 20, 1988, plaintiffs Audubon and the Washington Department of Wildlife ("Wildlife") filed this action seeking to enjoin the defendant McDougal Forest Products, Inc. ("McDougal") from logging the Bogy II sale in the Olympic National Forest. Plaintiffs contended that the Forest Service failed to comply with the environ-mental review requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. and the Endangered Species Act, 16 U.S.C. § 1531 et seq. Plaintiffs filed this action the day after logging of the Bogy II sale had commenced. Plaintiffs immediately filed their motions for a temporary restraining order and for a preliminary injunction to enjoin the logging of the Bogy II sale. As a result, the parties agreed to halt logging until this Court could rule on those motions.

On July 1, 1988, the Court denied plaintiffs' motion for preliminary injunction because plaintiffs had failed to demonstrate the requisite irreparable injury. See Order Denying Preliminary Injunction (docket no. 26) at 23. The Court's Order noted, however, that Audubon had demonstrated a strong likelihood of success on the merits of its administrative appeal and NEPA claims. Id. at 6–7 (APA claims), 7–15 (NEPA claims). The Order particularly emphasized the strength of plaintiffs' arguments concerning the need for completion of an adequate EA or EIS before a timber sale may be approved and for inclusion of a cumulative impacts analysis in the project EA or EIS. Id. at 9–11 (timeliness), 12–14 (cumulative impacts). The Court also found that Audubon had failed to meet the statutory prerequisites for asserting its claim under the ESA. Id. at 15–16. The Court noted that if logging of the sale recommenced before the plaintiffs' administrative appeal to the Forest Service of the decision allowing such logging was concluded, "plaintiffs' appeal will be pointless." Id. at 7.

After the ruling of July 1, 1988, plaintiffs promptly sought from this Court an injunction to halt further logging of Bogy II pending appeal of this Court's Order. That motion was also denied and plaintiffs subsequently sought an emergency injunction from the Ninth Circuit. Again, pursuant to a series of joint stipulations among the parties entered into because of the appeal, no logging on Bogy II occurred before the Ninth Circuit's scheduled August 9, 1988, hearing on the emergency motion. On August 8, 1988, the day before the

Ninth Circuit was to hear and decide the emergency motion, the Forest Service cancelled the Bogy II sale contract, rescinded the existing Finding of No Significant Impact ("FONSI"), and ordered preparation of a new evaluation of cumulative effects to determine whether an Environmental Impact Statement was needed. *See* Exhibit A to Joint Stipulation and Motion Re Dismissal of Appeal (attached as Ex. A to Plaintiffs' Memorandum). The Forest Service took this action by issuing a decision in the pending administrative appeal of the Bogy II sale. The Forest Service's action was consistent with this Court's Order of July 1, 1988 and provided plaintiffs with substantially the same relief sought in this litigation. The Forest Service's action was the direct result of the lawsuit and the pending appeal.

## II.

### BASIS OF MOTION FOR FEES

■ EAJA provides that in any non-tort civil action brought by or against the United States, the court "shall" award attorney fees and expenses to a "prevailing party other than the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). EAJA creates a presumption that fees will be awarded to the prevailing party unless the government's position was substantially justified. *Thomas v. Peterson,* 841 F.2d 332, 335 (9th Cir.1988).

### A. *Prevailing Party*

■ Audubon may be deemed a prevailing party under EAJA if it establishes a " 'clear, *causal relationship* between the litigation brought and the practical outcome realized.' " *McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983) (emphasis in original; quoting *American Constitutional Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981)); *see also Oregon Environmental Council v. Kunzman,* 817 F.2d 484, 497 (9th Cir.1987) (test inquires whether the lawsuit was at least a material factor or played a catalytic role in bringing about

the desired result). The Ninth Circuit has developed a two-part analysis for determining whether a party is a prevailing party in the absence of a final judgment on the merits:

> First, in a factual inquiry, "the District Court must determine what the lawsuit sought to accomplish and then determine whether it was accomplished by means of the suit." ... Second, in a legal inquiry, the court must determine that the benefit achieved was required by law and was not a gratuitous act of the defendant.

*Greater Los Angeles Council on Deafness v. Community Television of S. Cal.,* 813 F.2d 217, 219–20 (9th Cir.1987) (citations omitted).

Although Audubon did not obtain a formal judgment on the merits in this litigation, the Court finds that Audubon is the prevailing party. Both the substance of the Forest Service's actions and the course of events leading up to the Service's cancellation of the Bogy II sale demonstrate that Audubon's lawsuit was a material factor in stopping the logging of Bogy II. Without this lawsuit, Bogy II would have been logged before the Forest Service heard Audubon's administrative appeal and such logging would have occurred pursuant to an inadequate environmental assessment under the then-existing sale contract with McDougal. Audubon brought suit because the Forest Service refused to halt logging of Bogy II or prepare a new environmental analysis of the sale that was both timely and adequate. The Forest Service has now satisfied each of these claims for relief by cancelling the resale of Bogy II and ordering the preparation of a new environmental review that must include the impact analyses previously omitted. *See* Exhibit A to Joint Stipulation and Motion Re Dismissal of Appeal. Thus, Audubon has fully attained the practical outcome it sought when it filed this action.

The Court finds a direct causal connection between Audubon's lawsuit and the Forest Service's subsequent actions. Prior to initiation of the lawsuit, the Forest Service had rejected all of Audubon's informal and formal efforts to delay logging of

Bogy II until the Forest Service prepared a timely and adequate environmental analysis. Once Audubon filed a lawsuit, however, pursuant to the parties' stipulations in the suit no further logging on Bogy II occurred, thereby effectively providing Audubon the stay of logging it requested. The Court finds that the Forest Service's recognition and assessment of the legal points raised by Audubon and acknowledged by this Court led to the complete cancellation of the sale contract for Bogy II and the relief sought by Audubon.

It is equally clear that the Forest Service's cancellation and reconsideration of Bogy II were not "gratuitous acts," but were both the result of and based on the points of law Audubon raised and asserted in this lawsuit. Indeed, the Forest Service's cancellation of the sale and rescission of the existing FONSI constitutes an admission that its previous determination of no significant impact did not satisfy the requirements of NEPA. *See* Exhibit A to Joint Stipulation and Motion Re Dismissal of Appeal. That the Forest Service's actions were not gratuitous is further evidenced by the fact that the Forest Service paid McDougal $500,000 to cancel the Bogy II sale contract. *See* Ex. C to Plaintiffs' Memorandum.

For the reasons stated herein, the Court concludes that Audubon was a prevailing party and is entitled to attorney fees unless the government's position was substantially justified.

### B. *Substantially Justified*

■ In this case, for the reasons stated in the Order dated July 1, 1988, the government's position was not substantially justified. The actions of the Forest Service did not have a reasonable basis in law or in fact. The Forest Service ignored several basic requirements of NEPA, despite the clear command that agencies must strictly adhere to the mandates of that Act. *See Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 787–88, 96 S.Ct. 2430, 2437–38, 49 L.Ed.2d 205, 216 (1976). Specifically, the agency (1) failed to complete its environmental analysis *before* it decided to proceed with the sale and award of a contract for the logging of Bogy II; and (2) neglected to perform a cumulative impacts analysis, despite the existence of clear regulations and judicial decisions that require it to do so. *See* Order at 7–14 (and regulations and cases cited therein). In litigation before this Court, the Forest Service denied that Audubon had not been given a meaningful opportunity for administrative review, that the 1988 EA was untimely, and that an analysis of cumulative impacts was necessary in its environmental assessment. This Court has specifically rejected the Forest Service's first contention and noted the likelihood that Audubon would prevail on the others. *See* Order at 7, 11, 14–15.

This was not a case involving matters of first impression or difficult questions of statutory interpretation. *Cf. Edwards v. McMahon*, 834 F.2d 796, 802–03 (9th Cir. 1987). This was not a case involving "a novel but credible extension or interpretation of the law", *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir.1988), or "a convoluted regulation which was difficult to interpret", *Southern Or. Citizens Against Toxic Sprays, Inc. v. Clark*, 720 F.2d 1475, 1481 (9th Cir.1983), *cert. denied*, 469 U.S. 1028, 105 S.Ct. 446, 83 L.Ed.2d 372 (1984). Rather, this was a case where the Forest Service simply ignored straightforward and important statutory obligations and forced Audubon to bring the matter to court to have the errors corrected. *Cf. Thomas*, 841 F.2d at 336 (government's position not substantially justified where it failed to prepare EIS studying cumulative impacts of proposed road and claimed in litigation that such a study was not required prior to construction of road, and where appellate court held cumulative impacts study was required before road was approved).

### C. *Special Circumstances*

■ The Forest Service argues in this case that special circumstances exist that make an award unjust under 28 U.S.C. § 2412(d)(1)(A), because the Audubon plaintiffs (who are entitled to fees under EAJA) joined with Wildlife, a public agency that is not entitled to fees under EAJA. Use of

the special circumstance exception to address the issue of awarding attorney fees under the EAJA to plaintiffs including both eligible and ineligible organizations may be a matter of first impression in this Circuit. The courts that have addressed use of the special circumstance exception to resolve this issue have disagreed on its proper resolution. In *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 393–94 (2d Cir.1985), *cert. denied sub nom. New York Dept. of Transp. v. Sierra Club*, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986), the Second Circuit held that fees should be awarded based on the ratio of eligible plaintiffs to total plaintiffs. This approach does not adequately address situations in which the participation of either the eligible or the ineligible parties is nominal or negligible or where, as here, the ineligible plaintiff is a federal agency that has interests separate from those of the other plaintiffs. In contrast, the Fifth Circuit has attempted to formulate a more flexible and fact-specific test:

> When parties eligible for EAJA fees join parties ineligible for EAJA fees, the district court must account for the free-rider problems that will inevitably exist. If the party ineligible for fees is fully willing and able to prosecute the action against the United States, the parties eligible for EAJA fees should not be able to take a free ride through the judicial process at the government's expense. Conversely, if the ineligible party's participation is nominal or narrow, then the eligible parties should not be denied the access that Congress sought to ensure by enacting the EAJA.

*Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir.1988) (footnote omitted).

After reviewing the above cases and the language of EAJA, the Court concludes that apportionment is part of the issue of the reasonableness of the fee. The basic question is whether the actions of the eligible parties and their counsel were reasonable and necessary to the successful prosecution of the case. This is the same inquiry the Court must make whenever it determines any award of attorney fees. Thus, here, the presence of an ineligible co-plaintiff, Wildlife, represented by its own counsel, may affect the reasonableness or necessity of certain expenditures by the eligible parties, but should not result in an automatic adjustment of the attorney fee award.

The Court finds and concludes that, under the particular facts of this case, no special circumstances make an award of fees to Audubon unjust, despite the participation of Wildlife (an ineligible co-plaintiff) with Audubon in the lawsuit. Audubon's fee request in this case encompasses only its reasonable and necessary expenditures. Audubon's counsel, the Sierra Club Legal Defense Fund ("SCLDF"), was lead counsel in the case, due to both the firm's expertise in public interest environmental litigation and its willingness to devote all resources necessary to the successful completion of the case. While Wildlife's attorneys worked with SCLDF, this merely reduced the effort that SCLDF needed to expend on the case.

Several factors made the participation of Audubon and SCLDF indispensable in this action. *See generally* Affidavit of Melanie J. Rowland; Affidavit of Terese Neu Richmond. First, although Wildlife may have been willing to file suit without the assistance of Audubon, there is a reasonable doubt about how vigorously Wildlife would have pursued the case in the absence of Audubon's participation. In addition, the combination of substantive legal knowledge and litigation expertise possessed by Audubon's counsel, the SCLDF attorneys, is found almost exclusively in public interest law firms like the Legal Defense Fund.

### III.

### AMOUNT OF FEES AND COSTS

EAJA provides that attorney fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," 28 U.S.C. § 2412(d)(2)(A), but "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings in-

volved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Audubon claims both a cost of living adjustment and a special factor adjustment in this case.

The Consumer Price Index ("CPI") stood at 279.9 in October, 1981 when EAJA was enacted. As of December, 1987, the most recent relevant figures for the CPI, it stood at 345.7, a 24 percent increase over the October, 1981 index. A cost of living increase of 24 percent is justified in this case. *See Animal Lovers Volunteer Ass'n, Inc. v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989). Audubon is also entitled to a fee enhancement because the Audubon attorneys have "some distinctive knowledge or specialized skill needful for the litigation in question...." *Pierce v. Underwood*, 487 U.S. 552, 572, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490, 509 (1988). The Sierra Club Legal Defense Fund ("SCLDF") engages entirely in *public interest* environmental litigation, a discrete, specialized field of practice. In particular, the Court is satisfied that Mr. True has demonstrated the requisite distinctive knowledge of and specialized skills in public interest environmental litigation. Because of his skills, Audubon was successful in preventing logging on the Bogy II sale. Mr. True should be paid at least $125 per hour for 119.65 hours, for a total amount of $14,956.25 for his work on the merits of this lawsuit. In addition, Mr. True should be paid $125 per hour for time spent on this fee application. Mr. True claims 33 hours, which the Court finds to be excessive. The Court will award fees for 15 hours at $125 per hour or $1,875.00. Mr. Berger, who served as a law extern, should be paid $50 per hour for 20 hours for his work on the fee application, or $1,000.00. The Court does not believe the statutory rate should be paid to a law extern under the circumstances of this case. Thus, the total amount of attorney fees awarded to Audubon against the Forest Service is $17,831.25.

Audubon also seeks recovery for costs and expenses of $6,707.42. Of this amount, $1,207.42 is sought for expenses, which are authorized under EAJA. 28 U.S.C. § 2412(d)(1)(A). These compensable expenses include all out-of-pocket "costs that are ordinarily billed to a client", including "telephone calls, postage, air courier and attorney travel expenses". *International Woodworkers of Am., AFL–CIO, Local 3–98 v. Donovan*, 792 F.2d 762, 767 (9th Cir.1985). The expense of computerized legal research is also recoverable. *Sinclair v. Insurance Co. of N. Am.*, 609 F.Supp. 397, 409 (E.D.Pa.1984), *aff'd without op. sub nom. Appeal of INA Corp.*, 782 F.2d 1029, *Appeal of Sinclair*, 782 F.2d 1031, *Sinclair v. Cigna Corp.*, 728 F.2d 1031 (3d Cir.1986). Audubon's records show that the expenses in the amount of $1,207.42 incurred in this litigation were necessary.

In addition, the statute expressly authorizes recovery of "the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case...." 28 U.S.C. § 2412(d)(2)(A). Audubon seeks $5,500.00 for the services of its expert witnesses, Richard A. Stahl and David Bricklin. Mr. Stahl has nine years of experience combining an expertise in forestry with a familiarity with federal environmental protection laws and Forest Service Policy and Planning. Compensation at the rate of $65.00 per hour is reasonable. Mr. Stahl claims 80 hours of work. However, 30 hours dealt with assisting in the preparation of Ninth Circuit pleadings. This necessarily involves legal work for which the Court will not compensate Mr. Stahl. Accordingly, Audubon is awarded $65.00 per hour for 50 hours, or a total of $3,250.00 for Mr. Stahl's fees. Mr. Bricklin should be compensated for two hours at the statutory rate of $75.00 per hour for a total of $150.00. Thus, the total amount of expert witness fees awarded to Audubon against the Forest Service is $3,400.00.

EAJA requires the government to pay interest on a fee award which is unsuccessfully appealed. Interest should run from the date of the award in the event of an appeal. 28 U.S.C. § 2412(f).

## IV.

## CONCLUSION

Audubon's motion for attorney fees is GRANTED under EAJA. Audubon is awarded a total of $17,831.25 for attorney fees, $1,207.42 for costs and $3,400.00 for expert witness fees. The total award of costs and fees is $22,438.67.

IT IS SO ORDERED.