**Patrick J. MUNNELLY, Plaintiff,**

v.

**MEMORIAL SLOAN KETTERING CANCER CENTER, Defendant.**

**No. 89 Civ. 0302.**

United States District Court, S.D. New York.

June 20, 1990.

---

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, by Julian R. Birnbaum, Jennifer L. Braun, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, New York City, by Bernard M. Plum, Joseph Baumgarten, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Patrick Munnelly, formerly an administrator of defendant Sloan Kettering Memorial Cancer Center ("Memorial" or "the Hospital"), brought this action against defendant pursuant to the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. §§ 621 *et seq.*, alleging wrongful discharge based on age discrimination. By Order of June 18, 1990, familiarity with which is assumed, this Court denied defendant's motion for summary judgment, finding a genuine dispute as to material facts surrounding his discharge. Presently before this Court is an *in limine* motion concerning the proper measure of damages, including back pay and insurance.

### Background

In November 1987, plaintiff was discharged from his position as administrator at Memorial. He was 56 years old. Under Munnelly's severance package, he would remain on Memorial's payroll until January 1989, receiving approximately 14 monthly installments of his $78,000 annual salary. Memorial also continued to pay Munnelly's life insurance premiums until February of 1989. Munnelly paid additional premiums under this plan, as he had during his employment with Memorial, in order to insure a death benefit of $268,000. In May 1988, seven months after his discharge from Memorial, Munnelly started working at New York's Foundling Hospital, earning a salary of $60,000 a year. Munnelly did not purchase a new insurance package.

Because the substantive issue of discrimination will be resolved at trial, the principal question before this Court is what evidence of damages plaintiff will be permitted to put before the jury. Plaintiff wishes to recover front pay in lieu of reinstatement, damages including lost back pay, liquidated damages as provided for in Section 7(b) of the ADEA, interest, pension, and other benefits, including the cost of lost insurance premiums. Defendant disputes plaintiff's claim for full recovery of back pay, contending that Munnelly's new earnings at Foundling should offset damages for back pay. Defendant further contests plaintiff's claim for the cost of procuring new insurance, arguing that because plaintiff did not in fact purchase such insurance, defendant has no duty to finance it.

## Discussion

### Back Pay

■ ADEA remedies should "ensure that victims of age discrimination [be] made whole." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir. 1984) (citing *Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981)). The "make-whole" approach requires that victims of discrimination be "restored to the economic position they would have occupied but for the intervening unlawful conduct of employers." *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978) (cited in *Geller*, *supra*, 635 F.2d at 1036); *see also Meschino v. International Tel. & Tel. Corp.*, 661 F.Supp. 254, 257 (S.D.N.Y.1987) (Kram, J.). By the same token, the make-whole approach requires that recoveries be calculated in order to prevent plaintiffs from receiving an unwarranted windfall. *See e.g., Meschino, supra*, 661 F.Supp. at 259 (discriminatory employer entitled to deduct pension benefits received at plaintiff's new job from an ADEA award); *Sinclair v. Insurance Company of North America*, 609 F.Supp. 397, 400 (E.D.Pa.1984), *aff'd* 782 F.2d 1029, 1031 (3d Cir.1986) (offsetting severance payments against ADEA recovery for back pay).

The facts of the case at bar are similar to those in *Sinclair*. Plaintiff Sinclair secured new employment shortly after defendant wrongfully discharged him. Although he took a pay cut of approximately $10,700 per year, defendant had given plaintiff $70,000 in severance payments. The district court, in a ruling affirmed by the Third Circuit, held that the severance pay must be credited against the loss of earnings caused to the employee because of the unlawful discrimination. *Id.* at 401.

■ In the case at bar, as in *Sinclair* and *Meschino, supra*, failure to offset any damage award by the amount of his severance pay would put Munnelly in a better position than he would have been had he not been terminated. Such a recovery would go beyond the make-whole purpose of the ADEA. Considering the facts of this case in light of the directive to put victims of discrimination in the economic position they would have occupied but for the discrimination, this Court concludes that plaintiff should offset any back pay damages he may receive against the seven months of salary he concurrently earned at Foundling.

Plaintiff maintains that such an offset would undermine the goals of the ADEA in discouraging unlawful age discrimination. According to the plaintiff, an offset in damages would have a lesser deterrent effect on employers who discriminate on the basis of age. Moreover, he argues, an offset based on new earnings might actually discourage ADEA plaintiffs from exercising due diligence in finding new employment. Plaintiff bases his argument on *Sims v. Madame Paulette Dry Cleaners*, 638 F.Supp. 224 (S.D.N.Y.1986). In *Sims*, a Title VII case, the defendant terminated plaintiff Sims without any severance package. Sims went several months with no salary except for her unemployment benefits. Finally, she found new employment, earning a salary higher than that which she earned from defendant. Defendant argued that Sims should offset her damages by the difference in her new salary increase and her former salary. This Court declined such an offset, holding that it

would undermine Title VII's policy of deterring discrimination. *Id.* at 230. The Court further held that allowing an offset would be essentially imposing a punishment on plaintiff for searching for new employment. *Id.* The Court, however, did require plaintiff to offset her unemployment benefits. *Id.* at 232.

*Sims* does not command an opposite result in this case. Sims actually worked to earn her higher salary, whereas Munnelly received 14 months of unearned salary as part of his severance package. Munnelly's severance pay is more analogous to Sims' unemployment benefits, which the Court did in fact offset from her eventual recovery. 638 F.Supp. at 232. Thus, even if damages issues in this ADEA case were to be treated like Title VII damages,[1] monies received as interim payments not in exchange for actual labor could be offset by a damage award. This approach does not undermine the deterrence purposes of ADEA, for if liability is found, even after deducting Munnelly's Foundling salary, Memorial will still be required to pay some damages to plaintiff.

■ Accordingly, defendant may deduct from Munnelly's eventual award, if any, the severance pay Munnelly received during the seven months that those payments overlapped with his new job.

*Insurance*

Plaintiff further seeks $1,076 a month to compensate him for lost life insurance premiums. Defendant claims that plaintiff is not entitled to such damages because he did not actually purchase any new life insurance premiums. Plaintiff argues, however, that he exercised reasonable diligence to purchase comparable insurance. He argues that he did not purchase a new policy only because the policy which most resembled that which he held while employed with Memorial was prohibitively expensive. Defendant contends, however, that because

plaintiff did not actually purchase the new insurance, he should not be able to recover the costs of the premium. Defendant further argues that even if this Court were to hold that reasonable efforts to procure insurance could warrant damages, plaintiff would still not be entitled to recovery because the insurance sought provided different benefits than plaintiff's insurance package from Memorial.

■ Fringe benefits are available as monetary damages under the ADEA. *See, e.g., Buckley v. Reynolds Metals Co.,* 690 F.Supp. 211, 218–20 (S.D.N.Y.1988) (compensating for loss of pension benefits, life insurance, employer contributions to savings plan and lost vacation time). The discussion of fringe benefits in *Fariss v. Lynchburg Foundry Inc.,* 769 F.2d 958 (4th Cir.1985), is instructive. In *Fariss,* the wrongfully-terminated employee died, and plaintiff's decedent attempted to recover the cost of the premiums that he would have paid had he obtained substitute life insurance after being fired. However, Fariss did not actually attempt to obtain any substitute coverage. The court refused to award money that substitute coverage might have provided, but did award those proceeds which he would have received from his employer under his previous life insurance plan had he not been wrongfully discharged. *Id.* at 966.

The court went on to suggest that had Fariss earnestly but unsuccessfully sought insurance benefits, he, like a plaintiff who diligently but unsuccessfully seeks substitute employment, could still recover. *Id.* at 965–66; *see Bonura v. Chase Manhattan Bank N.A.,* 629 F.Supp. 353, 360 (S.D.N.Y. 1986) (likening plaintiff's duty to procure substitute insurance to plaintiff's duty to mitigate back pay damages by seeking other employment) (citing *Fariss* ); *see also Buckley, supra,* 690 F.Supp. at 219 (citing *Fariss* and *Bonura* ).

---

1. Plaintiff apparently hopes to exploit the similarities some courts have recognized between Title VII and ADEA actions. *Trans World Airlines v. Thurston,* 469 U.S. 111, 121 n. 16, 105 S.Ct. 613, 621 n. 16, 83 L.Ed.2d 523 (citing *Hodgson v. First Federal Savings and Loan,* 455

F.2d 818, 820 (5th Cir.1972)); *but see Lorillard v. Pons,* 434 U.S. 575, 585 n. 14, 98 S.Ct. 866, 872 n. 14, 55 L.Ed.2d 40 ("[Congress] had a different intent in drafting the ADEA" than it had in drafting Title VII).

**64**

■ The Court adopts this analysis and holds that a successful ADEA plaintiff may recover for the cost of a life insurance package comparable to that which he received through his previous employer, even if he does not actually procure such comparable insurance, provided that he makes diligent efforts to do so. In order to prevail at trial, plaintiff will have the burden of proving (1) that he was reasonably diligent in seeking substitute insurance, and (2) that the premiums for which he would like to recover are in fact comparable or the closest substitute to that which he was receiving while in defendant's employ.

■ Defendant contends that even if the Court were to find that a plaintiff's reasonable efforts to purchase insurance are enough to fulfill his "mitigation" requirements, Munnelly's efforts were not satisfactory. These are issues of fact to be determined by the factfinder. If the jury finds that plaintiff made reasonable efforts to purchase substitute insurance, denying plaintiff recovery for unpaid insurance premiums would be inconsistent with the make whole purpose of the ADEA.

For the reasons stated above, the Court will allow the jury to consider evidence regarding plaintiff's recovery for his lost insurance premiums.

Conclusion

As set forth above, the Court will admit evidence going to the following measures of damages: (1) an offset of severance payments against any back pay award plaintiff may receive; and (2) evidence of plaintiff's reasonable efforts to procure an insurance package comparable to that which he received through his previous employer.

The matter shall proceed to trial.

SO ORDERED.