702 F.2d 686
 31 Fair Empl.Prac.Cas. 376,
31 Empl. Prac. Dec. P 33,429, 9 Ed. Law Rep. 1184
 Bob H. LEFTWICH, Appellee,
v.
HARRIS-STOWE STATE COLLEGE; Board of Regents, Harris-Stowe
State College; William G. Gillespie; James A.
DeClue; Paul Brammeier; Velma Martin;
Thomas F. Rafferty; William
Diehm, Appellants.
Bob H. LEFTWICH, Appellant,
v.
HARRIS-STOWE STATE COLLEGE; Board of Regents, Harris-Stowe
State College; William G. Gillespie; James A.
DeClue; Paul Brammeier; Velma Martin;
Thomas F. Rafferty; William
Diehm, Appellees.
Bob H. LEFTWICH, Appellee,
v.
HARRIS-STOWE STATE COLLEGE; Board of Regents, Harris-Stowe
State College; William G. Gillespie; James A.
DeClue; Paul Brammeier; Velma Martin;
Thomas F. Rafferty; William
Diehm, Appellants.
 Nos. 82-1676, 82-1692 and 82-1815.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1983.
Decided March 15, 1983.
 
 Anne V. Maloney, Charles R. Oldham, St. Louis, Mo., for Harris-Stowe State College, et al.
 Thomas A. Mickes, Bradley S. Hiles, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for Bob H. Leftwich.
 Ann H. Franke, Lawrence White, American Ass'n of University Professors, Washington, D.C., Roger L. Goldman, St. Louis, Mo., for amicus curiae.
 Michael N. Martinez, Gen. Counsel (Acting), Philip B. Sklover, Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Barbara Lipsky, Atty., E.E.O.C., Washington, D.C., for amicus curiae E.E.O.C.
 Before HEANEY and McMILLIAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Defendants Harris-Stowe State College and the members of its Board of Regents appeal from the district court's[1] finding, 540 F.Supp. 37, that they violated the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964 by excluding Dr. Bob Leftwich from the faculty when the Missouri legislature transferred the college from the St. Louis Board of Education to the state college system. Plaintiff Leftwich cross-appeals from the court's finding that he was not unconstitutionally denied due process and from its denial of his request for certain relief. We affirm the district court's finding that the defendants engaged in unlawful age discrimination. We also hold that Leftwich is entitled to reinstatement as an associate professor with accrued seniority, back pay, attorneys' fees and certain costs.
 
 I.
 BACKGROUND
 
 2
 Prior to 1979, the St. Louis Board of Education operated Harris-Stowe College. In 1978, the Missouri legislature enacted a statute to transfer control of Harris-Stowe to the state college system. Shortly thereafter, the governor appointed a six-member Board of Regents for Harris-Stowe State College.
 
 
 3
 After the transfer, the accreditation, facilities, curriculum and student body of the college remained largely unchanged. The Regents, however, decided to hire a new faculty for the "new" state college. For assistance in the transition and faculty selection processes, the Regents hired an education consultant, Dr. Warren Joseph.
 
 
 4
 Joseph advised the Regents to reduce the number of full-time faculty members in order to reduce instructional costs and to permit the "new" state college to compare more favorably with the costs of other institutions in the state college system. Specifically, Joseph recommended a plan which would reduce the faculty from fifty-one members to approximately thirty-four. Under that plan, the Regents would initially select a designated number of faculty members who were tenured at the "old" city college and a designated number of nontenured teachers from that college.
 
 
 5
 The Regents agreed to adopt Joseph's plan. Neither Joseph nor the Regents revealed this tenure-based selection plan to the faculty at the "old" city college; instead, the defendants merely invited those faculty members to submit applications for positions with the "new" state college.
 
 
 6
 After reviewing all applications, Joseph recommended thirty-three faculty members from the "old" city college to be selected for the "new" state college.[2] The Regents accepted all of these recommendations. The teachers who were not selected were sent termination letters. After the termination notices were received, the Regents held hearings to review the applications of certain discharged teachers who had requested such review. The Regents "rehired" two faculty members on the basis of their hearings.
 
 
 7
 One of the faculty members who was not recommended by Joseph, nor selected by the Regents after a review hearing, was plaintiff Leftwich. He is a white male; and at the time of his discharge, he was forty-seven years old. Leftwich joined the Harris-Stowe faculty as a lecturer in 1968. In 1972, he obtained a doctorate in biology and was promoted to the rank of assistant professor. The college promoted him to associate professor in 1975, and appointed him chairman of the biology department in 1977. While on the faculty of the "old" city college, Leftwich received a number of research grants and contributed several articles to professional journals.
 
 
 8
 Leftwich was one of three biology teachers at the "old" city college who applied for a position with the "new" state college. Under Joseph's plan, the "new" college had only two biology positions available--one tenured and one nontenured. The Regents selected Nathanial Watlington, a sixty-two-year-old black male for the tenured position, and Dr. Terry Werner, a thirty-year-old white male, for the nontenured position. Although the defendants denied that Leftwich had tenure status in response to his due process claim, they concede that he, along with Watlington, were only considered for the tenured vacancy in the "new" biology department. The defendants considered no one other than Werner for the nontenured biology position on the "new" faculty. The defendants concede that Leftwich received a higher score than either Watlington or Werner on each of the evaluation measures devised by Joseph. To explain the defendants' choices for the two biology positions, Joseph told the plaintiff that he had been a "victim of tenure density."
 
 
 9
 In August, 1979, Leftwich filed charges of race and age discrimination with the Equal Employment Opportunity Commission (EEOC). After unsuccessfully attempting to conciliate the matter, the EEOC issued a right-to-sue letter in January, 1981. In February, 1981, the plaintiff filed suit in the Eastern District of Missouri, naming as defendants Harris-Stowe State College and its Board of Regents. The district court held that the defendants' discharge of the plaintiff violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. Secs. 621 et seq. The district court held against Leftwich on his claim that he was denied due process in violation of the Fourteenth Amendment. It awarded the plaintiff reinstatement, attorneys' fees and costs. Both the plaintiff and defendants appeal.
 
 II.
 LIABILITY
 
 10
 The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer "to fail or refuse to hire or to discharge or otherwise discriminate against any individual * * * because of such individual's age." 29 U.S.C. Sec. 623(a)(1). The plaintiff, relying on a disparate impact theory, contends that the defendants' faculty selection plan for the "new" state college discriminated on the basis of age in violation of the ADEA.
 
 
 11
 To establish a prima facie case of age discrimination under a disparate impact theory, a plaintiff need not show that the employer was motivated by a discriminatory intent; he or she need only demonstrate that a facially neutral employment practice actually operates to exclude from a job a disproportionate number of persons protected by the ADEA. Geller v. Markham, 635 F.2d 1027, 1032 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). See Griggs v. Duke Power Co., 401 U.S. 424, 431-432, 91 S.Ct. 849, 853-54, 28 L.Ed.2d 158 (1971). The court below found that the defendants' plan to reserve certain positions on the "new" state college faculty for nontenured staff had a disparate impact on employees protected by the ADEA--faculty members between forty and seventy years of age. See 29 U.S.C. Sec. 631(a). We affirm that finding.
 
 
 12
 Dr. H.R. Hollingsworth, the plaintiff's statistical expert who conducted several studies of Harris-Stowe, testified that the mean age of the tenured faculty at the "old" city college was 45.8 years, while the mean age of nontenured faculty was 34.3 years. He also testified that the mean annual salary at the "old" city college for tenured faculty was $17,900 compared to $13,025 for nontenured faculty. In addition, Dr. Hollingsworth performed a statistical correlation test which showed a positive, significant correlation between age and salary for faculty members at Harris-Stowe College.
 
 
 13
 Based on these findings, Dr. Hollingsworth stated that, in his opinion, the defendants' faculty selection system which reserved certain positions for nontenured faculty would have an adverse effect on the employment of older faculty members. He also concluded that the defendants' use of salary as a factor in the selection process would have an adverse impact on older faculty members.
 
 
 14
 Statistical evidence such as that presented by Dr. Hollingsworth is clearly an appropriate method to establish disparate impact. See, e.g., Hazelwood School District v. United States, 433 U.S. 299, 306-309, 97 S.Ct. 2736, 2740-42, 53 L.Ed.2d 768 (1977); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 337-340, 97 S.Ct. 1843, 1855-57, 52 L.Ed.2d 396 (1977). In contrast, the defendants did not present a statistical expert to refute the plaintiff's evidence at trial; nor did they present any other statistical information on the impact of their selection policies. In fact, the defendants' consultant, Joseph, stated at trial that both he and the Regents knew that the policy of reserving certain positions for nontenured faculty would have an adverse impact on older faculty members, but they implemented the plan anyway.
 
 
 15
 The defendants argue for the first time on appeal that the overall impact of their faculty selection process was not discriminatory because the average age of the "new" faculty was virtually the same as the average age of the "old" faculty. We, of course, need not consider arguments that were not raised in the court below. Lewis v. United States Marine Corps, 674 F.2d 714, 717 (8th Cir.1982). In any event, the Supreme Court rejected this type of "bottom line" defense in Connecticut v. Teal, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). When, as here, a member of a protected class is eliminated from consideration for a job on the basis of a selection criterion that had a discriminatory impact, the fact that other members of his or her class were hired does not prevent the rejected employee from establishing a prima facie case, nor does it provide the employer with a defense to a disparate impact case. Id. at ----, 102 S.Ct. at 2528, 73 L.Ed.2d at 134.
 
 
 16
 Accordingly, the district court's finding that the defendants' selection plan had a disparate impact on employees protected by the ADEA was not clearly erroneous and it is affirmed. See Fed.R.Civ.P. 52(a).[3] Once the plaintiff established his prima facie case, the burden of persuasion shifted to the defendants to prove that their selection plan was justified by business necessity. E.g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); Geller v. Markham, supra, 635 F.2d at 1032.
 
 
 17
 The defendants' primary justification is that they adopted their selection plan as a cost-saving measure. Quite simply, the plan was intended to reduce costs by eliminating some positions at the college for tenured faculty who were generally higher paid than the nontenured faculty. The district court held that this cost justification did not establish a business necessity defense. We agree.
 
 
 18
 In enacting the ADEA, Congress was plainly concerned about unemployment among older workers and the difficulty they encounter in obtaining or retaining employment. H.R.Rep. No. 805, reprinted in 1967 U.S.Code Cong. & Ad.News 2213-2220. The express purpose of the Act is "to promote employment of older persons based on their ability rather than age" and "to prohibit arbitrary age discrimination in employment." 29 U.S.C. Sec. 621.
 
 
 19
 Here, the defendants' selection plan was based on tenure status rather than explicitly on age. Nonetheless, because of the close relationship between tenure status and age, the plain intent and effect of the defendants' practice was to eliminate older workers who had built up, through years of satisfactory service, higher salaries than their younger counterparts. If the existence of such higher salaries can be used to justify discharging older employees, then the purpose of the ADEA will be defeated.
 
 
 20
 The EEOC has also interpreted the ADEA in this manner. The EEOC guidelines explicitly provide:
 
 
 21
 A differentiation based on the average cost of employing older employees as a group is unlawful except with respect to employee benefit plans which qualify for the section 4(f)(2) exception to the Act.
 
 
 22
 29 C.F.R. Sec. 1625.7(f) (1981).
 
 
 23
 Moreover, the EEOC guidelines adopt without substantive change the position previously taken by the Department of Labor when it administered the ADEA. The Department of Labor regulations stated:
 
 
 24
 It should also be made clear that a general assertion that the average cost of employing older workers as a group is higher than the average cost of employing younger workers as a group will not be recognized as a differentiation under the terms and provisions of the Act, unless one of the other statutory exceptions applies. To classify or group employees on the basis of age for the purpose of comparing costs, or for any other purpose, necessarily rests on the assumption that the age factor alone may be used to justify a differentiation--an assumption plainly contrary to the terms of the Act and the purpose of Congress in enacting it. Differentials so based would serve only to perpetuate and promote the very discrimination at which the Act is directed.
 
 
 25
 29 C.F.R. Sec. 860.103(h) (1979) (Emphasis added.)
 
 
 26
 Similarly, federal courts have held that economic savings derived from discharging older employees cannot serve as a legitimate justification under the ADEA for an employment selection criterion. See, e.g., Geller v. Markham, supra, 635 F.2d at 1034; Laugeson v. Anaconda Co., 510 F.2d 307, 316-317 (6th Cir.1975). As the court in Marshall v. Arlene Knitwear, 454 F.Supp. 715, 728 (E.D.N.Y.1978), stated in straightforward fashion:
 
 
 27
 Where economic savings and expectation of longer future service are directly related to an employee's age, it is a violation of the ADEA to discharge the employee for those reasons. [Citations omitted.]
 
 
 28
 The other justification offered by the defendants for their selection plan is that it promotes innovation and quality among the faculty by giving the college flexibility to hire nontenured faculty. The district court also rejected this justification. We again affirm that finding.
 
 
 29
 First, the record makes it clear that the defendants' principal, if not only, purpose in adopting their selection plan was to eliminate some tenure positions in order to effectuate cost savings. Second, to the extent that the defendants in fact utilized their selection plan in an attempt to increase the quality of the college's faculty, they have failed to establish that the plan was necessary to achieve their goal.
 
 
 30
 The defendants' burden of demonstrating business necessity is a heavy one. Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810 (8th Cir.1983), at 815. They must show that their selection plan has " 'a manifest relationship to the employment in question,' * * * [and] that there is a 'compelling need * * * to maintain that practice.' " Id. (citations omitted) (emphasis in original).
 
 
 31
 The defendants failed to demonstrate that reserving nontenured slots was necessary to bring new ideas to the college. Instead, their assertion that younger nontenured faculty would have new ideas apparently assumes that older tenured faculty members would cause the college to "stagnate." Such assumptions are precisely the kind of stereotypical thinking about older workers that the ADEA was designed to eliminate. Indeed, the record in this case reveals that the defendants' plan may have frustrated the development of new ideas within the college because it succeeded in eliminating the plaintiff who was actively involved in research and had published several articles, while retaining a nontenured faculty member whose contribution to new research in the profession was concededly less than that of Leftwich.
 
 
 32
 Thus, the defendants have failed to meet their burden of demonstrating that their discriminatory selection plan was justified by business necessity. We therefore affirm the district court's holding that the defendants violated the ADEA by adopting their tenure-based faculty selection plan.[4]
 
 III.
 RELIEF
 
 33
 The district court awarded Leftwich reinstatement to the Harris-Stowe faculty, attorneys' fees and costs, but it denied him back pay. Both parties challenge various aspects of the remedy fashioned by the district court.
 
 
 34
 A. Reinstatement.
 
 
 35
 The ADEA provides legal and equitable remedies to eliminate unlawful employment discrimination and to restore aggrieved persons to the positions in which they would have been if the illegal practices had not occurred. 29 U.S.C. Sec. 626. See Gibson v. Mohawk Rubber Co., 695 F.2d 1093 at 1097 (8th Cir.1982). The Act affords the district court discretion to fashion appropriate relief, and its remedy can be set aside only if that discretion is abused. See Brennan v. Ace Hardware Corp., 495 F.2d 368, 376 (8th Cir.1974).
 
 
 36
 The court below ordered Leftwich reinstated as an associate professor--the position he held prior to his termination in 1979. The plaintiff contends that the district court erred in denying him reinstatement to the rank of full professor.
 
 
 37
 The district court based its decision on its findings that "[a]t the old college promotions to the rank of full professor were apparently granted only rarely and were a sign of distinct achievement," and that "promotions at the new college may be even more difficult to obtain." Although the plaintiff's evidence indicates that he would have been eligible to become a full professor in the 1979-1980 school year if he had not been discharged, we cannot say after carefully reviewing the record that the district court's reinstatement remedy constitutes an abuse of discretion.
 
 
 38
 We do hold, however, that the plaintiff is entitled to retroactive seniority to the beginning of the 1979-1980 school year. See Franks v. Bowman Transportation Co., 424 U.S. 747, 766-779, 96 S.Ct. 1251, 1265-71, 47 L.Ed.2d 444 (1976). The record provides no justification for denying Leftwich the seniority benefits he would have accumulated if the defendants had not unlawfully denied him his faculty position.
 
 
 39
 B. Back Pay.
 
 
 40
 The district court awarded Leftwich no back pay because his total interim earnings from the St. Louis Board of Education during the 1979 to 1982 school years completely offset the salary he would have received from Harris-Stowe State College during that period.[5] The plaintiff argues that the district court erred in failing to calculate his back pay entitlement on a year-by-year basis. We agree with the plaintiff's position.
 
 
 41
 Under a year-by-year approach, when, as here, a plaintiff's interim earnings in any year exceed the wages he or she lost due to the discrimination, that "excess" must not be deducted from any back pay for other years to which the plaintiff is entitled. In Locke v. Kansas Power and Light Co., 660 F.2d 359, 366-369 (8th Cir.1981), this Court approved a back pay determination which was based on a year-by-year method. Other federal courts have also utilized a year-by-year approach to calculate back pay. See, e.g., Harkless v. Sweeny Independent School District, 466 F.Supp. 457 (S.D.Tex.), aff'd, 608 F.2d 594 (5th Cir.1979); United States v. Lee Way Motor Freight, Inc., 15 F.E.P. Cases 1385, 1388-1389 (W.D.Okla.1977), aff'd in relevant part, 625 F.2d 918 (10th Cir.1979).
 
 
 42
 In this case, calculating back pay under the year-by-year method, Leftwich is entitled to back pay in the amounts of $809.50 for 1979-1980 and $594.26 for 1980-1981.[6] Accordingly, that part of the district court's judgment concerning back pay is reversed, and the court is instructed to enter judgment for back pay to the plaintiff in the sum of $1,403.76.
 
 
 43
 C. Liquidated Damages.
 
 
 44
 Under the ADEA, liquidated damages may be awarded if the plaintiff establishes that the defendant willfully violated the Act. 29 U.S.C. Sec. 626(b); Gibson v. Mohawk Rubber Co., supra, 695 F.2d 1093 at 1097. The district court held that Leftwich was not entitled to liquidated damages. After carefully reviewing the record, we cannot say that the court below erred in concluding that the defendants did not willfully violate the ADEA. Accordingly, we affirm the district court's denial of Leftwich's request for liquidated damages.[7]
 
 
 45
 D. Attorneys' Fees.
 
 
 46
 The court below awarded the plaintiff attorneys' fees as a prevailing party pursuant to 42 U.S.C. Sec. 2000e-5(k). The court denied the defendants' motion to reconsider its fee award because the defendants filed their motion two days after the five-day limit set by Local Rule 7(B)(2). The defendants appeal, contending that Local Rule 24(C)(2), which covers costs and contains a twenty-day limitation on responses, rather than Local Rule 7(B)(2) governed their motion. They also raise several objections concerning the merits of the district court's fee award.
 
 
 47
 The threshold issue here is whether attorney fees are part of costs and subject to Local Rule 24(C)(2), or whether they are separate from costs and subject to Local Rule 7(B)(2). To support their view, the defendants rely upon 42 U.S.C. Sec. 2000e-5(k), which provides in part that a prevailing party may recover "a reasonable attorney's fee as part of the costs." The defendants' reliance on this statutory language is misplaced.
 
 
 48
 In Obin v. District No. 9, International Association of Machinists and Aerospace Workers, 651 F.2d 574, 579-580 (8th Cir.1981), this Court concluded that "despite the statutory language describing attorney's fees as 'part of the costs' Congress did not intend to include attorney's fees within the specific type of costs recoverable after judgment under [Fed.R.Civ.P.] 54."[8] Thus, the Court held that "a motion for attorney's fees raises a collateral and independent claim, not an application for costs under Rule 54(d) or a matter integral to the merits of the action." Id. at 582.
 
 
 49
 Because a motion for attorneys' fees is independent from a motion for costs, it is not subject to Local Rule 24(C)(2), which covers only costs. Therefore, the plaintiff's motion for attorneys' fees was governed by Local Rule 7(B)(2), which contains a five-day limit on responses. The defendants, having failed to raise a timely objection to plaintiff's fee award in the court below, cannot now claim that the district court abused its discretion in refusing to reconsider its fee award.
 
 
 50
 E. Costs.
 
 
 51
 Finally, the defendants raise various objections to the costs awarded by the district court. With one exception, we affirm the award. That exception is the court's award of $145.89 for Lexis research. We believe that computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award the district court granted Leftwich. Accordingly, we vacate that portion of the district court's cost award relating to Lexis research.
 
 IV.
 CONCLUSION
 
 52
 For the foregoing reasons, the district court's judgment is affirmed in part and reversed in part.
 
 
 
 [1]
 The Honorable James Meredith, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 The application material submitted by each applicant included a self-assessment instrument, student evaluations, a personal information form and a recommendation by one of two teams of outside evaluators who interviewed each faculty candidate
 
 
 [3]
 The defendants also contend that their tenure-based selection plan did not operate to exclude Leftwich from the "new" state college. Rather, they claim that regardless of the selection plan, the Board of Regents would have selected the plaintiff for the "new" faculty if his demeanor had not been so poor at his post-termination hearing. The defendants' position is untenable. If they had not utilized their unlawful selection plan, Leftwich likely would have been chosen initially for the "new" faculty without a hearing because his qualifications concededly were superior to those of the other two candidates for the two biology positions. Moreover, while the plaintiff's conduct at that hearing perhaps was not exemplary, the record simply does not sustain the defendants' claim that it was the sole basis for not rehiring him
 
 
 [4]
 In the court below, the plaintiff also contended that the defendants' failure to include him in the "new" faculty violated the ADEA under a disparate treatment theory, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and violated the Fourteenth Amendment by denying him due process. Because we sustain the district court's holding that Leftwich prevailed on his disparate impact claim under the ADEA, we need not address the other theories of liability advanced by the plaintiff
 
 
 [5]
 See note 6, infra
 
 
 [6]
 
 LOST ACTUAL BOARD
 HARRIS-STOWE OF EDUCATION
SCHOOL YEAR SALARY EARNINGS BACK PAY OWED
----------- ------------ -------------------- -------------
 1979-1980 $22,309.50 $21,500.00 $ 809.50
 1980-1981 $24,094.26 $23,500.00 $ 594.26
 1981-1982 $24,094.26 $25,500.00 -0-
 -------------
 TOTAL BACK PAY...... $1,403.76
 
 
 [7]
 We likewise affirm the district court's holding that the plaintiff is not entitled to recover punitive damages or damages for pain and suffering under any of his other theories of liability
 
 
 [8]
 The statute in issue in Obin v. District No. 9, International Association of Machinists and Aerospace Workers, 651 F.2d 574 (8th Cir.1981), was 42 U.S.C. Sec. 1988, which contains language identical to the statute relied upon by defendants here, 42 U.S.C. Sec. 2000e-5(k)