# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1559

_____

Equal Employment Opportunity     \*
Commission,     \*

    \*

      Plaintiff - Appellee,     \*

    \*   Appeal from the United States

     v.     \*   District Court for the

    \*   Eastern District of Missouri.

Allstate Insurance Company,     \*

    \*

      Defendant - Appellant.     \*

_____

Submitted: November 15, 2007
Filed: June 10, 2008

_____

Before MELLOY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

BRIGHT, Circuit Judge.

This age discrimination case is before us on a proper interlocutory appeal from the district court's[1] order granting partial summary judgment in favor of Appellee, the Equal Employment Opportunity Commission ("EEOC"). The EEOC alleges that a rehire policy implemented by Appellant, Allstate Insurance Company ("Allstate"), had a disparate-impact on Allstate's employee-agents in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, _et seq_.

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

Following cross-motions for summary judgment, the district court granted in part the EEOC's motion for partial summary judgment holding: (1) the rehire policy was an "employment policy," which could be challenged under a disparate-impact theory; and (2) the EEOC's statistical evidence established a prima facie case of disparate-impact.

On January 4, 2007, the district court certified the following two questions for interlocutory appeal: (1) whether Allstate's rehire policy is an "employment policy" which can be challenged under a disparate-impact theory of discrimination; and (2) whether the statistics proffered by the EEOC and adopted by the district court, establish disparate-impact as a matter of law? These are close and difficult questions. We have jurisdiction under 28 U.S.C. § 1292(b). After carefully reviewing the parties' arguments and relevant case law we answer both questions in the affirmative and affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.      Allstate's "Preparing for the Future" Group Reorganization Program

Until June 2000, Allstate employed approximately 6,300 employee-agents to sell property and casualty insurance. Allstate also sold property and casualty insurance through "Exclusive Agents", who were independent contractors. In 1990, Allstate stopped hiring employee-agents.

On November 10, 1999, Allstate announced its "Preparing for the Future" Group Reorganization Program ("Reorganization Program"), which would terminate *all* employee-agents effective June 30, 2000. Under the program, an employee-agent had four possible "severance" options. The first two options allowed an employee-agent to become an independent contractor, i.e., "Exclusive Agent," and receive a $5,000 bonus. The third option offered enhanced severance pay if the employee signed a release of legal claims against Allstate. The fourth option was similar to the

third, except the employee was not required to sign a release and would receive a base severance pay. Allstate gave the employee-agents until June 1, 2000 to select an option.

## II.    The Rehire Policy

Between June 2000 and September 2000, Allstate did not have in place a policy that restricted the rehire of its former employee-agents.[2] On September 26, 2000, after realizing that there was no "rehire policy" in place in connection with the Reorganization Program, Allstate implemented a "rehire policy" that restricted a former employee-agent's rehire. JA I at 124. This policy applied only to the former employee-agents who were terminated under the Reorganization Program. Pursuant to the rehire policy, former employee-agents would not be considered for rehire in *any* employee position with Allstate for a period of either (1) one year from their termination date; or (2) the length of time the former agents received severance benefits from Allstate, whichever was longer.

## III.    Procedural History

### A.    *Motions for Summary Judgment*

On October 7, 2004, the EEOC filed a complaint in the District Court for the Eastern District of Missouri challenging Allstate's "rehire policy" under the ADEA. The EEOC does not challenge the termination of the employee-agents. Rather, the EEOC challenges the subsequent restriction on rehiring, which Allstate implemented on September 26, 2000. The complaint alleged that the rehire policy had a disparate-

---

[2]There was deposition testimony indicating that three former employee-agents had been hired into non-agent positions during this time. Joint App'x (JA) I at 135.

impact on former employee-agents ages forty and older.[3]  Following discovery, both parties filed motions for partial summary judgment.

The EEOC moved for partial summary judgment on the issue of liability.  It argued that the rehire policy resulted in a disparate-impact on workers ages forty and older and that the policy could not be justified by a reasonable factor other than age. To show that the rehire policy had a disparate-impact on older workers, the EEOC offered three different statistical analyses.  The first analysis compared the total number of employees subject to the rehire policy ages forty and older to the total number of employees under forty who were subject to the rehire policy.  Of the 6,312 employees subject to the rehire policy, 90.3% (5,599) were ages forty and older when Allstate implemented the Reorganization Program.[4]  On the other hand, 9.7% (613) of the employees subject to the rehire policy were less than forty years old when the Reorganization Program was implemented.

The second analysis compared the employees subject to the rehire policy with Allstate's overall workforce.  The 5,599 employees who were ages forty and over when the Reorganization Program was implemented represented 23% of Allstate's general workforce,[5] while the 613 employees under age forty represented 2.7% of Allstate's general workforce.

---

[3]The complaint also contains a claim for intentional discrimination, which is not at issue in this appeal.

[4]The EEOC calculated the ages of the former employee-agents as of the date of their termination, which was also the date the Reorganization Program was implemented.

[5]The EEOC's statistical report calculated Allstate's total workforce by adding the total number of "active employees" not subject to the rehire policy, 40,961, and the total number of employee-agents subject to the rehire policy, 6,312.  This yielded a total of 47,273.  JA I at 20 (Sisolak Report).

The third analysis compared the average age of employees subject to the rehire policy with those not subject to the policy, i.e., the rest of Allstate's general workforce. The average age of those subject to the rehire policy was 51.1, while the average age of those not subject to the rehire policy was 39.4. According to the EEOC's statistical expert, "the employees affected by the [rehire policy] were, on the average, almost 12 years older than those who were not affected." JA I at 21.

In its cross-motion for partial summary judgment, Allstate argued that the rehire policy was a "hiring policy." Therefore, the EEOC could not challenge the rehire policy under a disparate-impact theory because the Supreme Court opined in Smith v. City of Jackson, 544 U.S. 228, 236 n.6 (2005), that a disparate-impact claim is not cognizable under the ADEA with respect to hiring policies. Furthermore, Allstate argued that the EEOC did not establish that the rehire policy had a disparate-impact on *job applicants* over the age of forty because, as a matter of law, the proper way to determine whether a *hiring* policy has a disparate-impact is to determine the policy's impact on the *applicant pool*. Finally, Allstate argued that even if the EEOC established disparate-impact, the hiring policy was based on a reasonable factor other than age and therefore does not violate the ADEA.

## B.     The District Court's Order

The district court granted in part and denied in part the EEOC's motion for partial summary judgment. EEOC v. Allstate Ins. Co., No. 04-cv-1359, slip op. at 21 (E.D. Mo. Oct. 19, 2006). The court agreed with Allstate that after Smith, hiring policies are no longer susceptible to disparate-impact challenges. Id. at 8. The court, however, held that Allstate's rehire policy was an "employment policy," not a hiring policy and therefore the EEOC could proceed under a disparate-impact theory. Id. at 11-15. Next, the court held that the EEOC made out a prima facie case of disparate-impact because the EEOC established that the rehire policy had a statistically significant impact on older workers. Id. at 16-18.

-5-

The district court, however, denied the EEOC's motion for summary judgment on the issue of whether the rehire policy was supported by a reasonable factor other than age. Id. at 20. It held that there were disputed issues of material fact on the reasonableness of the policy, thus precluding summary judgment on this issue.[6]

Following the district court's order granting in part and denying in part the EEOC's motion for partial summary judgment, Allstate filed a motion to certify for interlocutory appeal the district court's order favoring the EEOC. The district court granted Allstate's motion on interlocutory appeal. EEOC v. Allstate Ins. Co., No. 04-cv-1359 (E.D. Mo. Jan. 4, 2007). We also have permitted this appeal. We turn to the issues.

## DISCUSSION

This Court reviews a district court's grant of summary judgment de novo applying the same standards as the district court. McGinnis v. Union Pacific R.R., 496 F.3d 868, 873 (8th Cir. 2007); Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1039 (8th Cir. 2007). We also apply this standard to a district court's grant of partial summary judgment. See FDIC v. Bell, 106 F.3d 258, 263 (8th Cir. 1997). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to [the nonmoving party] and giving [the nonmoving party] the benefit of all reasonable inferences, shows there is no genuine issue of material fact . . . ." Morgan, 486 F.3d at 1039.

---

[6]This issue is not before us in this interlocutory appeal.

**I. Whether Allstate's rehire policy is an "employment policy" which can be challenged under a disparate-impact theory of discrimination?**

The Age Discrimination in Employment Act of 1967 ("ADEA") provides in part:

> (a) Employer practices
> It shall be unlawful for an employer–
>> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>>
>> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. § 623(a)(1), (2). The ADEA affords protection to "individuals who are at least 40 years of age." § 631(a). The term "employee" is defined by the ADEA as "an individual employed by any employer." § 630(f).

Unlike a disparate-treatment theory, which challenges an intentionally discriminatory employment practice, a disparate-impact theory may be used to challenge employment practices that are "fair in form but discriminatory in practice." Wards Cove Packing Co. Inc., v. Antonio, 490 U.S. 642, 645 (1989); see also Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977) ("[Disparate-impact claims] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another."). Under a disparate-impact theory, "a facially neutral employment practice may be deemed [discriminatory] . . . without evidence of the employer's subjective intent to discriminate." Wards Cove Packing Co., 490 U.S. at 645-46.

Until the Supreme Court's 2005 decision in Smith, 544 U.S. 228, whether a plaintiff could proceed on a disparate-impact theory under the ADEA remained an open question. In Smith, the Court held that disparate-impact claims are available under the ADEA. Id. at 232. The Court, however, limited this holding to challenges to discriminatory employment classifications prohibited under § 623(a)(2). In a footnote, the Court explained that disparate-impact claims are *not available* to challenge *hiring* and termination practices prohibited under § 623(a)(1). Id. at 236 n.6. In concluding that disparate-impact is not available to challenge hiring and termination practices under § 623(a)(1), the Supreme Court focused on the textual differences between sections (a)(1) and (a)(2). Id. The text of section (a)(1) focuses on the effect of the "employer's actions with respect to the targeted *individual*," which gives rise to a disparate-treatment claim but not a disparate-impact claim. Id. (emphasis added). On the other hand, the text of section (a)(2) focuses on the effect of an employer's practices on employees *generally*, which, unlike section (a)(1), gives rise to a disparate-impact claim. Id. (emphasis added).

Because the EEOC challenged Allstate's rehire policy under a disparate-impact theory, they may proceed if (1) the policy is an employment policy, which (2) "deprives or tends to deprive any individual of employment opportunities" under § 623(a)(2).

Allstate argues that the policy at issue here relates to hiring and therefore falls squarely under § 623(a)(1). First, the rehire policy only affected *former* employees and not current employees. Second, the policy only applied to former employees once they placed themselves in the general applicant pool and applied for positions with Allstate. And third, in refusing to hire former employee-agents, Allstate was not treating them as employees, it was treating them as job applicants. Therefore, Allstate contends, the policy is appropriately characterized as a hiring policy within the plain language of § 623(a)(1).

The district court rejected Allstate's arguments. The court observed that it would be illogical to treat the rehire policy as a hiring policy when "[a]pplicants from the general labor pool would not be subject to the rehire policy at issue, because they were not former employees." Allstate Ins. Co., No. 04-cv-1359, slip op. at 12. On the other hand, the district court noted that the rehire policy did not fit squarely into the definition of an "employment policy" because it affected only *former* employee-agents. Id. Notwithstanding the difficulty in characterizing the rehire policy as either an "employment policy" or "hiring policy," the district court reasoned that "the most logical approach is to treat the rehire policy as part of the Reorganization Plan which effected [sic] all employee-agents." Id. at 13. And "[a]lthough the Reorganization Plan alone is not being challenged, the rehire policy is inextricably linked to that plan, affecting the same group of employee-agents." Id. at 14. Thus, the district court determined that the rehire policy was an "employment policy" and not a "hiring policy." Id. at 15.

Finally, the district court ruled the rehire policy resulted in "the termination and subsequent refusal to hire over 6,000 employees," and therefore should be "appropriately addressed under § 623(a)(2)" as an employment policy which deprived employees of employment opportunities with Allstate.

We agree with the district court that Allstate's rehire policy falls within the meaning of § 623(a)(2) as an employment policy. First, the rehire policy was inextricably linked to and implemented as part of an employment policy, i.e., the Reorganization Program. And second, the rehire policy served to deprive a specific group of Allstate employees of employment *opportunities* with Allstate, a practice § 623(a)(2) specifically proscribes.

Relying on the fact that Allstate implemented the rehire policy *after* the Reorganization Program terminated all employee-agents, Allstate argues that the rehire policy did not affect *employees*, it only affected *former employees*, who,

according to Allstate, are not protected under § 623(a)(2). Allstate's reliance on the timing of the rehire policy puts form over substance. In substance and, indeed, by its very terms, the rehire policy, entitled "Preparing for the Future Reorganization Program (*Clarification Of Re-Hire Policy*)," was a part of the Reorganization Program. As its title suggests, the rehire policy *only* applied to employee-agents discharged as a result of the Reorganization Program, a fact which Allstate does not dispute. Moreover, the reasons Allstate offered for implementing the rehire policy further supports the conclusion that the rehire policy was part of the Reorganization Program. Karleen Zuzich, the drafter of Allstate's rehire policy, testified at her deposition that in implementing the rehire policy, Allstate sought to encourage employee-agents "to be part of the exclusive agent program."[7] JA I at 126, 131, 151, 152. We therefore conclude that the rehire policy is an employment policy because it was implemented as part of an employment policy, i.e., the Reorganization Program.

Next, to fall within § 623(a)(2), the rehire policy must "limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities." § 623(a)(2). Allstate's rehire policy denied employee-agents the opportunity to be rehired, albeit for a limited period of time. Such a policy, we hold, deprived Allstate's employee-agents of employment opportunities with Allstate.

We therefore hold that the EEOC may challenge the rehire policy under § 623(a)(2) on a disparate-impact theory.

---

[7]However, the rehire policy was not implemented until September 2000, three months after Allstate terminated its employee-agents and three months *after* the June deadline for the employee-agents to decide whether to become independent contractors. Furthermore, Allstate *never* disclosed the rehire policy to its employee-agents. JA I at 153. It then becomes somewhat difficult to understand how the rehire policy could have influenced an employee-agent's decision to become an Exclusive Agent.

**II.** **Whether the statistical analyses proffered by the EEOC establish a prima facie case of disparate-impact under the ADEA?**

We now turn to whether the EEOC established a prima facie case of disparate-impact. The district court concluded that each of the EEOC's statistical analyses established disparate-impact. With the exception of the average age analysis, we agree.

To establish a prima facie case of disparate-impact under the ADEA, the plaintiff must identify a specific employment practice and then present "statistical evidence of a kind and degree sufficient to show that the practice in question caused" the plaintiff(s) to suffer an adverse employment action. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95 (1988); Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 953 (8th Cir. 2001). To establish disparate-impact, however, the statistical evidence must be of a kind and degree "sufficient to show that the practice in question has *caused* the [disparate-impact]." Watson, 487 U.S. at 994 (emphasis added). While the Supreme Court has not framed these statistical formulations in rigid mathematical terms, the Court has "consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation." Id. at 995.

Allstate argues that even if this Court characterizes the rehire policy as an employment policy, a determination of disparate-impact requires a statistical analysis of the actual hiring of older workers. In other words, Allstate contends that to properly determine whether the rehire policy had a disparate-impact requires an analysis of the policy's affect on the *hiring* of older and younger *applicants*. And therefore, because the EEOC's statistical analyses make no comparison to the relevant applicant pool, Allstate contends they must be rejected.

The district court held that all three statistical analyses put forth by the EEOC made out a prima facie case of disparate-impact. The court concluded that the EEOC identified a specific employment practice–the rehire policy–and offered sufficient evidence to establish that the policy had a statistically significant impact on employee-agents ages forty and older. Allstate Ins. Co., No. 04-cv-1359, slip op. at 16. The court rejected Allstate's argument that the proper method of analysis is to evaluate how the rehire policy affected the "general applicant pool." The district court reasoned that because the case was not a hiring case, "it would be inconsistent to now use a hiring analysis to determine whether there was a disparate-impact." Id. at 17. Rather, "[t]reating the Reorganization Plan as inextricable from the rehire policy, the appropriate analysis is that suggested by the Plaintiff; comparing the total number of Allstate employees within the protected group that were affected by the policy, with the number of Allstate employees not in the protected group that were affected by the policy." Id. at 18. Noting that Allstate did not dispute the accuracy of the EEOC's statistics, the court granted summary judgment in favor of the EEOC on the issue of impact. Id.

We agree with the district court that after characterizing the rehire policy as an "employment policy," it would be error to use a "hiring analysis" to evaluate whether the policy had a disparate-impact. If this were a hiring case covered under § 623(a)(1), Allstate's approach, relying on Wards Cove Packing Co., 490 U.S. 642,

would be correct.[8]  This, however, is not a hiring case and therefore a hiring analysis does not apply.

More importantly, Allstate ignores Supreme Court precedent to the contrary by arguing that the characterization of the rehire policy as an employment policy does not compel this Court to reject a hiring analysis.  In Connecticut v. Teal, 457 U.S. 440, 451 (1982), the Supreme Court rejected applying a "bottom-line" analysis to determine whether, under a disparate-impact theory, an employment policy denied certain employment *opportunities* to black employees.[9]

In Teal, four black employees of the State of Connecticut challenged a promotion policy which, as an absolute condition for consideration for promotion, required applicants to pass a written test.  Id. at 443.  The test had the effect of excluding black employees in disproportionate numbers from consideration. Overall, only twenty-six out of forty-eight black employees who took the exam passed.  Id. at 444. However, out of 259 white employees who took the exam, 206 passed.  Id.  The district court determined that there was no disparate-impact because the "bottom-line" result of the promotional process was more favorable to black employees than white

_____

[8]In Wards Cove Packing Co., the Supreme Court held that when challenging an employer's selection of employees (a hiring practice or policy) under a disparate-impact theory, the appropriate analysis is to compare the composition of the at-issue jobs and the composition of the qualified population in the relevant labor market. Referred to as "external work force comparisons," this is the general method for establishing disparate-impact in *hiring* cases.  490 U.S. at 650-51 ("It is such a comparison–between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs–that generally forms the proper basis for the initial inquiry in a disparate-impact case.").

[9]Teal dealt with a parallel provision under § 703(a)(2) of Title VII, which, but for the use of the word "race," is identical to language found in § 623(a)(2) of the ADEA.  Smith, 544 U.S. at 233.

employees: 22.9% of black applicants were promoted versus 13.5% of white applicants were promoted. Id. at 445.

The Supreme Court rejected this "bottom-line" analysis. Id. at 450. Rather, the Court held that to properly evaluate whether the employment policy had a disparate-impact, the appropriate analysis focuses on the written test's affect on employment *opportunities* for black employees. Id. at 451. Because the passing rates for black employees (54.17%) was lower than that of white employees (79.54%), the test denied more black employees than white employees the *opportunity* for promotion and therefore had a disparate-impact on black employees. Id.

Applying the Teal analysis to this case, we conclude that two of the EEOC's statistical analyses establish that the rehire policy had a disparate-impact on older workers. The EEOC offered evidence that 90.3% of employee-agents barred from rehire were ages forty and older, while only 9.7% of employee-agents barred from rehire were under forty. Viewed from a different perspective, the EEOC offered evidence that employee-agents ages forty and older, subject to the rehire policy, represented 23% of Allstate's overall workforce, while the employee-agents under forty, also subject to the rehire policy, represented only 2.7% of Allstate's overall workforce. These substantial statistical disparities demonstrate that the rehire policy denied more older workers than younger workers employment opportunities with Allstate, therefore raising an inference of causation sufficient to establish a prima facie case of disparate-impact. See Watson, 487 U.S. at 994-95 ("[The] statistical disparities must be sufficiently substantial that they raise such an inference of causation.").

Finally, we conclude that the EEOC's average age analysis does not establish disparate-impact in this case. Relying on Leftwich v. Harris-Stowe State College, 702 F.2d 686 (8th Cir. 1983), the EEOC contends that comparing the average age of employee-agents subject to the rehire policy–51.1–with the average age of Allstate's

general workforce, not subject to the rehire policy–39.4–establishes disparate impact. Allstate counters that <u>Leftwich</u> does not support the EEOC's average age comparison to Allstate's general workforce. We agree with Allstate that <u>Leftwich</u> does not support the EEOC's average age analysis. And we also conclude that the EEOC's average age comparison does not establish disparate-impact.

In <u>Leftwich</u>, Harris-Stowe State College reduced the number of full-time faculty members in order to lower instructional costs at its new college. In so doing, the college reserved a designated number tenured and nontenured faculty positions at the new college. <u>Id.</u> at 689. The college invited all faculty to submit applications for positions with the new college. <u>Id.</u> The plaintiff brought suit alleging the policy, which reserved a certain number of positions at the new college for nontenured faculty had a disparate-impact on older teachers. <u>Id.</u> at 690. To show the policy had a disparate-impact, the plaintiff compared the average age of tenured faculty ineligible for nontenured faculty teaching positions at the new college–45.8–with the average age of nontenured faculty who could still obtain such positions–34.3. <u>Id.</u> The college argued in response that "the overall impact of their faculty selection process was not discriminatory because the average age of the 'new' faculty was virtually the same as the average age of the 'old' faculty." <u>Id.</u> at 691.

<u>Leftwich</u> held that the plaintiff's comparison of the average age of faculty ineligible for non-tenured positions at the new college with those who were eligible was an appropriate means of establishing disparate-impact. The plaintiff succeeded in making out a prima facie case because the comparison revealed that the average age of ineligible faculty was over forty while the average age of those eligible was under forty. <u>Id.</u>

<u>Leftwich</u> does not support the EEOC's argument that a comparison to Allstate's overall workforce, *not subject* to the rehire policy, is an appropriate method of establishing disparate-impact. In <u>Leftwich</u>, the college's rehire policy created a

subclass among the faculty members by reserving faculty positions at the new college for nontenured faculty. Id. at 689. The plaintiff then compared the average age of tenured faculty subject to the policy to nontenured faculty also subject to the policy. Leftwich therefore considered only an average age comparison made between faculty members *subject to* the college's rehire policy, it did not rely on an average age comparison to the college's *general workforce*.

Allstate's rehire policy, on the other hand, did not create a subclass among employee-agents subject to the policy and therefore, Leftwich does not address the situation presented here. More generally, we conclude that comparing the average age of employee-agents subject to the rehire policy with the average age of Allstate's overall workforce does not demonstrate disparate-impact. The difference in the average age between Allstate's overall workforce and the employee-agents cannot possibly reveal how that policy affected older workers because the policy simply did not apply to the overall workforce. We therefore conclude that the EEOC's average age analysis does not establish disparate-impact.

Nevertheless, the EEOC has established a prima facie case of disparate-impact because two of the EEOC's statistical analyses demonstrate that the policy fell more harshly on older workers than younger workers.

**CONCLUSION**

For the foregoing reasons, we hold: (1) Allstate's rehire policy is an employment policy under § 623(a)(2) and therefore can be challenged under a disparate-impact theory; and (2) the EEOC established a prima facie case of disparate-impact by demonstrating that the rehire policy served to deprive more older workers than younger workers of employment opportunities with Allstate. Accordingly, we affirm the district court.

-16-

Our holding, however, is limited to the questions presented on this interlocutory appeal.

SHEPHERD, Circuit Judge, dissenting.

I would find that the EEOC's challenge to the rehire policy falls under section 29 U.S.C. § 623(a)(1), not (a)(2), and is, therefore, not susceptible to a disparate impact claim. Here, the majority observes that Allstate had terminated all employee-agents as of June 30, 2000; that Allstate did not have a policy that restricted the rehire of its former employee-agents between June 2000 and September 2000; and that, during that three-month period, Allstate hired three former employee agents into non-agent positions. Ante at 2-3, 3 n.2. The facts, as stated by the majority, demonstrate that at the time Allstate put the rehire policy in place, the individuals affected by it were not Allstate employees.

I have been unable to find a single case that supports the majority's conclusion that section 623(a)(2) applies when former employees challenge their former employer's policy that came into existence after their termination. Rather, only employees may rely on either subjection of section 623(a)(2). Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1470 n.2 (8th Cir. 1996). The former Allstate employees affected by the rehire policy could only be applicants for employment, not employees, and, thus, the EEOC is limited to relying on section 623(a)(1) to challenge the policy. Id.; see Leftwich v. Harris-Stowe State Coll., 702 F.2d 686, 689-90 (8th Cir. 1983) (applying section 623(a)(1) where terminated professor, who was a faculty member of the college prior to transfer to state college system brought suit under the ADEA challenging his exclusion from the "new" college's faculty); Gaskey v. Fulton Bellows, LLC, No. 3:05-CV-540, 2007 WL 869621, at *5 (E.D. Tenn. Mar. 20, 2007) (unpublished) (applying section 623(a)(1) to former employees' claim that former employer's refusal to rehire them had a disparate impact on older applicants in violation of the ADEA).

-17-

In Leftwich, as here, the individuals impacted by the employer policy at issue were terminated prior to the inception of the challenged policy, and the policy purportedly restricted the individuals from obtaining another position with their former employer in violation of the ADEA. 702 F.2d at 689-90. This court, in discussing Leftwich, characterized it as a case "involving an applicant . . . ." City of Des Moines, 99 F.3d at 1470 n.2. It follows that the EEOC's characterization of this case as one that involves the classification of Allstate employees in such a way that disqualifies them for rehire and is, thus, actionable under section 623(a)(2) fails. Instead, it is one in which the EEOC is challenging an employer's policy that impacts potential applicants for employment. Accordingly, section 623(a)(1) applies.[10]

In view of this conclusion, the question becomes whether the EEOC can pursue a disparate impact claim under section 623(a)(1). Both the district court and the majority determined that Smith v. City of Jackson, Miss., 544 U.S. 228 (2005), precludes the EEOC from doing so; the EEOC concedes this point. In City of Jackson, a plurality of the Court stated that section 623(a)(1) "does not encompass disparate-impact liability . . . ," indicating that section 623(a)(2) does. Id. at 236 n.6.

_____

[10]The ADEA defines "employee" as "an individual employed by any employer." 29 U.S.C. § 630(f). As the EEOC points out, in the context of Title VII, the Supreme Court has found that the term "employees" includes former employees. Robinson v. Shell Oil Co., 519 U.S. 337, 345-46 (1997). The EEOC asserts that, because the ADEA defines employee in a similar manner, Robinson's broad construction of the term applies to section 623(a)(2). However, the EEOC has offered no support for this position. Furthermore, while "[s]ection 623(a)(2) of the ADEA governs employer conduct with respect to 'employees' only, . . . the parallel provision of Title VII protects 'employees or applicants for employment.'" Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1470 n.2 (8th Cir. 1996) (citing 29 U.S.C. § 623(a)(2); 42 U.S.C. § 2000e-2(a)(2)). Accordingly, the construction of section 623(a)(2) need not mirror that of the parallel Title VII provision. These key textual differences between the two provisions coupled with a complete lack of precedent for the EEOC's position persuades me that the term "employees" in section 632(a)(2) does not include former employees.

-18-

Justice O'Connor's concurrence, joined by Justices Kennedy and Thomas, stated that they would find "that disparate impact claims are not cognizable under the ADEA." Id. at 248 (O'Connor, J., concurring). Therefore, after City of Jackson, the source of disparate impact liability under section 623(a), if any, is subsection (a)(2) alone. Section 623(a)(1) claims, like this one, cannot establish liability on a disparate impact theory.[11]

In sum, the EEOC's challenge to Allstate's restriction on the rehire of former employees falls only under section 623(a)(1), a provision that does not allow recovery under a disparate impact theory of liability. Thus, the district court erred in partially granting the EEOC's motion for partial summary judgment. I would reverse the district court and grant Allstate's partial motion for summary judgment.

_____

[11]I note that this court's implicit determination in Leftwich v. Harris-Stowe State Coll., 702 F.2d 686 (8th Cir. 1983) that a disparate impact analysis is applicable to section 623(a)(1), id. at 690, as well as this court's statement in City of Des Moines that applicants may, pursuant to section 623(a)(1), bring disparate impact claims, 99 F.3d at 1470 n.2, have been abrogated by Smith v. City of Jackson, Miss., 544 U.S. 228 (2005).